IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **Children of the Court,** a non-profit corporation, and, **Judiciocracy LLC** | ) ) ) | |
| *Plaintiffs*, | ) ) ) | Case No: |
| v. | ) ) | |
| **Attorney Registration and Disciplinary Commission, Lea S. Gutierrez, and Tammy Evans, in their official capacities** | ) ) ) ) | |
| *Defendants*. | | |

**COMPLAINT**

Children of the Court, a non-profit corporation, and Judiciocracy LLC ("Judiciocracy") (together "Plaintiffs"), bring the underlying lawsuit for, *inter alia*, violations of Plaintiffs' First Amendment rights. Plaintiffs are seeking declaratory relief from Defendants Lea S. Gutierrez and Tammy Evans in their official capacities as administrator for Illinois' Attorney Registration and Disciplinary Commission ("ARDC"), (together "Defendants") for their unlawful prior restraint of Plaintiffs' speech by refusing access to their key executive by ascribing their speech to him in an effort to interfere with their mission. Plaintiffs seek injunctive relief which would require Defendants to recognize its speech as their own and not that of those with duties to assist them to speak. In support of their Complaint, Plaintiffs allege as follows:

**INTRODUCTION**

Children of the Court is a Missouri non-profit corporation, born from a student project at UCLA, that works with adult children of divorce to reunite those children with the courtrooms and judges that often had an outsized impact on their youth, and for intelligent case assignment in divorce court. Judiciocracy is a Missouri limited liability company responsible for numerous legal

1

news publications, including *ALABnews* and *AbusiveDiscretion*. Plaintiffs' 'key-man' is Edward "Coach" Weinhaus, an attorney licensed in California, Missouri and, importantly here, Illinois. After a significant career in public records reporting, Coach Weinhaus founded Judiciocracy, before successfully expanding with outside ownership while remaining the company's executive.

Both entities published a variety of truthful information related to Cook County and its judges. One judge took issue with a news story and complained to the ARDC before dropping the matter due to the Plaintiffs' rights noted herein. Now, the Defendants intend to use their formal charging powers against the Plaintiffs' key man for conduct of Plaintiffs and, as a result, interfere with their protected speech. This pressure has already dramatically limited Plaintiffs' ability to publish news stories, investigate, and continue their court reform efforts.

## **THE PARTIES**

1. Plaintiff Children of the Court is a Missouri non-profit corporation.

2. Plaintiff Judiciocracy LLC ("Judiciocracy") is a Missouri limited liability company.

3. Defendant Illinois Attorney Registration and Disciplinary Commission is a public body responsible for attorney conduct.

4. The ARDC is a state actor, at all times acting under the color of state law.

5. Defendant Lea S. Gutierrez is the current Administrator of the ARDC and is being sued only in her official and representative capacity.

6. At all times material hereto, she has been a state actor, acting under the color of state law.

7. Defendant Tammy Evans is Senior Legal Counsel for the ARDC and is being sued only in her official and representative capacity.

8. At all times material hereto, she has been a state actor, acting under the color of state law.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs allege violations of constitutionally protected rights and privileges.

10. The Court has personal jurisdiction over Defendants because each of the Defendants have operated and currently operates within the Northern District of Illinois and importantly each of the acts giving rise to the current lawsuit occurred within the Northern District of Illinois.

11. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because the acts or omissions giving rise to Plaintiffs' claims occurred in this District – specifically, Plaintiffs' constitutionally protected rights were violated within the Northern District of Illinois.

**FACTUAL ALLEGATIONS**

*Children Of The Court*

12. Children of the Court was founded by Social Entrepreneurship students and their professor – Coach – at UCLA in 2023. It is an advocacy group committed to helping children of divorce visit the courtrooms and judges who had an outsized influence on their childhood once they become adults as alleged in *Children of the Court et al v. Hon. Abbey Fishman Romanek*, N.D. Ill. Case 1:24-cv-08785[1]; and advocating for court administrative changes that prioritize the

---

[1] Aside from the claims made therein, that case raises an important issue of "who is responsible for courtrooms being open to the public?" which can only be answered by this esteemed Court.

assignment of parental rights case in family law to judges with relevant personal experience, i.e. having once been parents themselves or members of the foster community. These twin purposes are intended to ensure that children's best interests are always considered for the improvement of the judicial system.

13. Children of the Court aims to achieve these goals through, *inter alia*, research, advocacy, and collaboration with legal professionals to help judges and understand the unique needs of the children that are impacted by their decisions, resulting in more compassionate and informed decision making. By ensuring judges have the appropriate experience when making parental decisions, Children of the Court seeks to increase the esteem the public has for the judiciary.

14. Children of the Court was funded as part of a settlement between Mr. Weinhaus and a third-party in an unrelated lawsuit adjudicated in Cook County Circuit Court and overseen by Judge Thaddeus L. Wilson who approved the settlement and as of today retains jurisdiction over enforcing its funding. See Cook County Case # 2016CH07155.

15. Consequentially, although Children of the Court receives 10 years of funding and Coach is to lead it, according to the Judge Wilson approved settlement, Mr. Weinhaus must serve as a *volunteer* to the organization, ensuring no violation of the Private Inurement doctrine.

16. The organization has a board of four members, and an operations manager who was part of the founding student UCLA cohort.

### *Judicocracy LLC- The Legal News Publisher*

17. Mr. Weinhaus, early in his career formed *BlockTribune* (under a prior name) – a publication covering cryptocurrency news, later a cryptocurrency legal journal owned by his consulting company. He also founded and ran: *DiplomaPrivilege* – a news site covering the

movement to follow Wisconsin's lead in allowing bar admission without a bar exam; *ALABnews* and *AbusiveDiscretion* legal publications covering attorney misconduct and judicial eventually forming the publishing company, Judiciocracy LLC.

18. As Weinhaus testified to the ARDC, Judiciocracy was created to report on legal matters as a *media* company, not as a lawyer or law firm, so that it could be sold as such and therefore he felt the rules of professional conduct required it be separate from his law firm in 2023.

19. Judiciocracy acquired the publishing assets from Weinhaus' other entities in 2023 upon its formation. See Exhibit A.

20. Post-acquisition, Judiciocracy took full control of *ALABnews* and *AbusiveDiscretion* (and the other publications) including their news sites, their news production, their editorial standards, their customer service, their advertisements, their social media accounts, and their database backups of the publications.

21. Judiciocracy's public records reporting generally publishes 10 stories per day across news sites with a shared staff and IT function. Weinhaus remains its CEO.

22. Judiciocracy's editorial policy meets the highest standards in public records reporting. It also boasts some obvious corrective measures in case of errors or disputes:

   a. Any factual error reported to the company, or its publications is corrected in a timely manner;

   b. Any update to a story case is encouraged to be submitted as a news lead;

   c. Any story subject, like a legal professional, such as attorney or judge, is offered the chance, for free, to write their own factual rebuttal using the top-tier editorial and ombudsman-like standards.

23. Although the company has made few errors, it has corrected them without hesitation. Multiple judges and lawyers have obliged themselves of Judiciocracy's straight news approach tor updating their own misconduct proceedings.

24. In one instance, a judge in Texas, the Hon. Ursula A. Hall, reached out to the undersigned counsel (who forwarded the message along to Mr. Weinhaus) to have her own disciplinary record updated by Judiciocracy. Judiciocracy's news production process then took over. See Exhibit B.

25. Judiciocracy's investigative reporting into public records has been recognized by the Cook County Circuit Court where it appropriately received a fee waiver for a data request into judicial substitutions. See Exhibit C.

26. Judiciocracy gets sued in its own name, separate from its key man. Eg. *Kamath v. Ashmann-Gerst*, C.D.Cal Case # 8:23-cv-02193-SVW-SSC ECF #15 (First Amended Complaint naming "Judiocracy," and "Weingaus" as Defendants) (dismissed). Judiciocracy makes FOIA requests of public bodies and sues in its own name (see pending Lake County, Illinois FOIA litigation in conjunction with the Coalition Opposing Governmental Secrecy, of which it is a member.

*Reporting on the Paris Case*

27. The "Paris case" is a well-known divorce case in the Chicago-land area, including real estate developer Marty Paris, his ex-wife, and their *seven* children. (*Paris v. Paris*, Cook County Circuit Court Case # 2016D004685 ("Paris Divorce Case") wherein Mr. Paris was jailed - three times - while being insolvent, in bankruptcy, and unable to pay his lawyer's fees.

28. Judiciocracy published a series of stories related to the Paris Divorce Case, researched and reviewed the public records, and found experts in the field of criminal procedure,

citing, Dr. Isaac Amon, Professors Jayne Ressler of Brooklyn Law School, and Doug Rendleman of Washington and Lee School of Law to opine on the matter.

29. One of those stories led the Hon. Regina A. Scannicchio to complain to the ARDC about Mr. Weinhaus' involvement with the Plaintiffs by cutting and pasting the Plaintiffs' websites content, and only Plaintiffs' website content, into her complaint.

30. Weinhaus' then attorney, Ryan Cleys, responded, demonstrating that Judge Scannicchio had made false claims, and that the speech was clearly that of the Plaintiffs, not Mr. Weinhaus. (See *Farah v. Double M. Express Inc*, Case # 1:24-cv-01757 N.D.Ill ECF #4-1 Exhibit to Corrected Mot. For Pro Hac Vice (*granted*).)

*Defendants Pick Up Pursuit of Punishing Agent For Plaintiffs' Speech*

31. Absent supporting information from Judge Scannicchio to substantiate any of her claims, Defendant Tammy Evans, upon information and belief, was tasked by the ARDC to pursue Mr. Weinhaus further for Plaintiffs' speech to stifle it.

32. The investigation was pursued against Plaintiffs' speech on their websites because their key man, Mr. Weinhaus, was also an attorney. But the ARDC and Scannicchio earlier by default acknowledged that *no allegations have been tendered against Weinhaus*:

    a. That Weinhaus' work assisting the Plaintiffs' speech was in the practice of law or for his behavior during any case;

    b. For a crime;

    c. For even a tort;

    d. For anything other than assisting the Plaintiffs in pursuit of *their respective missions*.

    e. For violating his duties to the organizations, but rather for exactly tending to those duties.

33. Defendants are pursuing Plaintiffs' key man to frustrate Plaintiffs' pursuits of judicial reform that touch on Illinois. Other states who have investigated Plaintiffs' key man for Plaintiffs' speech have immediately dropped the matters. Not Defendants, though.

34. The Defendants' pursuit of Children of the Court's speech is clearly viewpoint discriminating. Precisely the same speech and actions including an attorney for a different (non-judicial reform organization) has been completely left alone because the purpose of that organization did not include reforming the judiciary.

35. On June 13, 2024, Weinhaus provided a sworn statement in Springfield, Illinois, represented by counsel ("SPRINGFIELD STATEMENT").

*Defendants' Speech-Chilling Acts*

36. During the SPRINGFIELD STATEMENT, Defendants ARDC and Tammy Evans threatened to prosecute Weinhaus' attorney for his own defense of Weinhaus' work for the Plaintiffs for his February 8, 2024 letter.[2]

37. Eight months after the SPRINGFIELD STATEMENT, mid-February 2025, Judiciocracy resumed its investigation into charges of lawyer-judge bribery in Cook County Courts, after those allegations began appearing in several federal lawsuits. Plaintiffs fear of being scooped seemed more realistic than the Defendants' continued pursuit of their key man.

38. Not having heard anything from the ARDC in those eight months, Judiciocracy instructed Weinhaus to verify certain accusations based on public records, additional court records provided to Judiciocracy after Chief Judge Evans' fee waiver, and traditional reporting techniques.

---

[2] Upon information and belief, this show of threat against an attorney for Weinhaus' defense, particularly that the speech is the Plaintiffs' speech will have an immediate chilling effect on Weinhaus' own counsel who has not yet re-raised the issue, nor been given an opportunity to do so.

8

39. In response, 8.5 months after the SPRINGFIELD STATEMENT with no new information or accusations, the ARDC announced that it sought to start the process to bring an official charge against Weinhaus ("CHARGE PURSUIT") for the purpose of stifling the speech and activities of the Plaintiffs. (No charges have yet been filed but are forthcoming based on communication from Defendants and the ARDC's processes of near certain charges once requested.)

40. Upon learning of the CHARGE PURSUIT, Weinhaus immediately ceased his reporting work for Judiciocracy resulting in a harm to the organization and its publications.

41. Due to Weinhaus' decades of experience and deep familiarity with the topic, any replacement or even complement would be prohibitively expensive.

42. Likewise, as Children of the Court's Executive Director, he required it freeze its letter campaigns which had previously yielded positive results, such as the interaction and interview with Judge William Stewart Boyd.

43. The only reason *more* letters have not gone out is due to the chilling effect of the Defendants' pursuit of Children of the Court's *volunteer* Executive Director.[3]

44. Each Plaintiff is now faced with an officer and director who is unable to perform his duties for either entity, nor can he fulfill his fiduciary duties to them because the Defendants have decided to reach into each entity to punish those inside each entity for each entity's own speech.

45. Just this month, Judiciocracy received an exclusive tip of an ARDC Complaint against one of the lawyers for his work in the *Paris* Divorce Case demonstrating the attorney had

---

[3] Both Plaintiffs reserve the right to pursue Mr. Weinhaus for a breach of fiduciary duty in an amended complaint or separate action.

9

both represented Mr. Paris and then Mr. Paris' opponent in the same litigation (earning $370k judgments against Mr. Paris) in a direct Illinois Rules of Professional Conduct Rule 1.9 violation. See Exhibit D. Rather than being able to employ the full services of Mr. Weinhaus for the scoop, Judiciocracy had to pay a European journalist with British certification as an outside consultant and have a separate member publish the story, instead of Mr. Weinhaus, due to the actions of the Defendants.

46. In fact, Weinhaus has had to recuse himself from any discussion of, or voting on, the decision to even institute this lawsuit from both Plaintiffs.

47. Judiciocracy, absent Weinhaus' input or vote, decided to institute this lawsuit on or before March 5, 2025; Children of the Court, absent Weinhaus' input or vote, decided to institute this lawsuit on March 5, 2025 at its annual board meeting, which took place in Del Mar, California. (Weinhaus did not participate in the discussion or vote.) The Board minutes were unanimously accepted on March 19, 2025.

*Loss of Access to Their 'Key Man' Is Significantly Speech-Curtailing*

48. Weinhaus, an international judicial reform advocate, may be best known for his role as the Special Advisor to the Chair of the Knesset's Constitution, Law, and Justice Committee during the bruising 2023 battle over Israeli Judicial Reform. He wrote in various publications, including the *Wall Street Journal* twice, arguing that judges in Israel exercise too much power.

49. Due to his public interest litigation and work with the Plaintiffs he has become nationally recognized as among America's most aggressive judicial reformers[4].

---

[4] Weinhaus has had unconventional success in public interest litigation for judicial reform. Children of the Court's filing the *Romanek* case and subsequent media coverage forced the *Paris* Divorce case to settle immediately thereafter (Judge Romanek took the case off call prior to settlement). An "in-person" plan in the domestic relations division which occurred thereafter raised

10

50. A brief list of his other judicial reform advocacy – often to the dismay of those who prefer the *status quo* – that he has led (without compensation) is worthy of a brief recap:

   a. Serves as *Amicus Curiae* in the Fifth Circuit Court of Appeals related to judicial ethics in a disqualification disputed, represented by the Hon. Michael Burrage (Ret.). *Dondero v. Jernigan*, No. 24-10287 (pending 5th Cir.) ECF #104 (motion), ECF #114 (granted), ECF #115 (Brief);

   b. Via funding from Judiciocracy, invented, wrote, and funded the "LAP Pledge" which led to pledges from federal and state court judges who believed in the concept. Their pledges led to claims by the Committee on Codes of Conduct of the Judicial Conference's Hon. Jennifer Elrod to "run afoul of [Judicial] Canons…" Letter from the Hon. Jennifer Elrod February 15, 2024.

   c. Via funding from Judiciocracy's predecessor, Weinhaus was the Founding Social Venture Capitalist of the Legal Accountability Project, paying for and launching the LAP Clerkships Database.[5]

---

the ire of hundreds of practitioners, including Weinhaus, who joined in a letter, presumably organized by its first signatory Attorney Deanna Blair, to the Hon. Regina A. Scannicchio to keep public access open via Zoom proceedings, which has worked. See Exhibit E. The jailing of divorce participants who can't pay their lawyers (part of the chilled Judiciocracy investigation) received a rebuke when Loevy & Loevy won a reversal of Judge Scannicchio on that issue in the Appellate Court as reported in the press in an unpublished Illinois opinion. But before it did, Weinhaus' litigation, then-represented by the undersigned, first shined the light on a Business League of judges for failing disclose their connections when refusing that kind of review of Judge Scannicchio's work. Judge Alonso of this District, demonstrated true judicial leadership by recusing himself from the case in a nod to the reformer's position – members of the IJA with a keen ethical sense, such as Judge Alonso, only need the issue before them to choose the right move. Identifying judicial leaders is an important part of role modeling an improving judiciary.

[5] *Legal Newsline* dubbed him the "Patron Saint of Clerks" for his work in getting LAP off the ground.

51. Weinhaus has, through his humanitarian volunteer work, gained the esteem of the attorneys who join, crossing political lines. These attorneys hail from the largest firms, Illinois court watchers, and solo practitioners from around the country such as the undersigned.[6]

52. Judges notice the value, too. Former Chief Justice of North Carolina's Supreme Court, the Hon. Mark Martin, added Weinhaus to HPU Law's Advisory committee. Weinhaus is formulating non-profit "StenoNO," enlisting advisory help from a state Supreme Court Justice, enabling nationwide access to court transcripts and recorded court proceedings.

53. In short, Weinhaus leverages his relationships to improve the judicial system at great personal risk and expense. Weinhaus may be among the only lawyers in the country who is willing to volunteer to risk making so many *judges* angry for improving *our* judicial system. To compound the financial cost, he risks the ire of the same judges in front of whom he practices. That is because, like with the idea of Children of the Court (judges who rule on parental issues should have parental experience), advocating for judicial reform can be both attractive and repulsive depending on the audience.

54. And that is the purpose of the First Amendment – to allow that conversation to happen.

55. The loss of access to their key man's efforts via the Defendants' actions have and will continue to cause irreparable damage to the important missions of the Plaintiffs.

56. As a direct result of ARDC's broad overreach into trying to regulate the speech and actions of the Plaintiffs, their speech has been curtailed; each Plaintiff has been forced to limit its

---

[6] See GazaPassage.org (interview between Dentons Christopher Bedell and Weinhaus, published March 23, 2025).

actions due to its 'key-man' being in rational fear for his law license for their speech, chilling their speech and frustrating their purpose.

57. Absent relief prohibiting the ARDC from proscribing *Plaintiffs' speech* to Weinhaus, in his capacity as an officer of the Court, Plaintiffs will be barred from their reform activities, the organizations' voices will be muted, and their missions mooted causing incalculable damages.

58. As such, the Defendants should be enjoined from using the speech of the Plaintiffs to attack anyone who owes the Plaintiffs a duty.

59. The Defendants' "long leash" cannot extend inside organizations having nothing to do with the practice of law, especially those that advocate for judicial reform.

60. The Plaintiffs have suffered financial damages from the ARDC's wrongful actions which, if pursued, will be done by separate action.

*The Constitutional Precedent Is Certain*

61. The Supreme Court of the United States makes clear that an attorney's rights to criticize judicial processes or public officials is sacrosanct, unless there is a pending case.

"In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Court was asked to determine whether Nevada's prohibition on extrajudicial statements was constitutional. After reviewing the history of professional obligations imposed on attorneys, Chief Justice Rehnquist quoted from two cases that discussed the tension between a lawyer's First Amendment rights and his duty to preserve the fairness of the trial:

> **"Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial, particularly an emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer….**
>
> **He is an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense."**

*Gentile*, 501 U.S. at 1072 (quoting Justice Frankfurter's dissent in *In re Sawyer*, 360 U.S. 622, 666, 668 (1959))." *Devine v. Robinson*, 131 F. Supp. 2d 963, 964-965, (N.D. Ill. 2001)

13

62. There is no question the ARDC has regulatory power over *Weinhaus* for *Weinhaus' conduct* as an *attorney* and particularly where he is involved in an active. *Id.* Weinhaus' participation in their proceedings and hiring two lawyers demonstrates how seriously he takes his respect for the Defendants, including his own refusal to steer the Plaintiffs in this matter.

63. The Plaintiffs relied on Constitutional protections before and during their formation to engage their key man and pursue their own missions for *their own speech*.

64. However, the ARDC is very specifically attacking the executive of the Plaintiffs only because of the *Plaintiffs' speech* – their criticism of various judicial actions, the injustices that followed, or pursuit of reform.

65. If a lawyer cannot help a media organization and a judicial reform organization speak without fear of reprisal, then those organizations have lost all ability to speak in that they have lost access to officers of the Court to even represent them (outside of a judicial proceeding, at least), and particularly to matters of serious public import as is the case here.

66. As evidence of Defendants' bad faith, no person either tangentially or directly – whether the Defendants, Judge Scannicchio, Judge Wilson, or any attorneys – have reached out to Plaintiffs to correct even a single error in what is fully truthful and protected speech. Judge Hall's behavior serves as guidance – she asked for coverage about updated and truthful information; she received it.

67. Therefore, Plaintiffs move for this Court to enter limited declaratory and subsequent injunctive relief:

    a. Declaring that that the speech of the Plaintiffs on their websites and letterhead or any that could reasonably be viewed attributable to them or on their behalf is that of the Plaintiffs and not that of those who owe Plaintiffs a duty;

14

b. And that the Defendants be barred from pursuing Plaintiffs' Officers and Directors for the speech of Plaintiffs.

## COUNT I
**Violation of Plaintiffs' First Amendment Rights**

68. Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

69. Defendants, acting under color of state law, deprived Plaintiffs of their rights under the First Amendment to the United States Constitution by pursuing their Director and Officer Weinhaus for the speech of the Plaintiffs because he is an attorney.

70. Defendants' actions have severely curtailed Plaintiffs' speech and limit their ability to function.

71. There is nothing speculative or hypothetical about the Defendants' actions towards Plaintiffs. Defendants have conceded that their actions are exclusively for the speech of the Plaintiffs by including only Plaintiffs' speech in their charges pursuit which is primarily intended to control Plaintiffs' Officer and Director's ability to assist Plaintiffs' speech through both direct oversight and chilling restrictions.

72. Thus, the Plaintiffs and Defendants are adverse.

73. Defendants have interfered with Plaintiffs ability to have its Officer and Director – in one case, a court-ordered volunteer - fulfill his fiduciary duties.

74. Defendants have caused Plaintiffs to expend significant resources to defend their rights, alter their activities, and be able to indemnify their Officer and Director against the speech-stifling behavior of Defendants.

75. Defendants have caused a chilling effect on Plaintiffs' speech and operations.

76. The injuries described herein are a direct result of Defendants' conduct towards Plaintiffs – particularly refusing to recognize their own rights to speak by attributing Plaintiffs' speech to Weinhaus for the purpose of chilling and stopping it.

77. The charges pursuit is flagrantly and patently violative of express constitutional prohibitions.

78. The case is ripe for adjudication due to Defendants' statement that they intend to pursue Plaintiffs' Director and Officer for the Plaintiffs' speech, a process they can and will repeat again and again even were they to feign dropping it "for now" which they have not done.

79. The Court's decision to grant the relief would immediately grant redress. There is an immediate and extraordinary need for relief.

80. The speech of the Plaintiffs is important and in the public interest as evidenced by the Defendants' own negligence in doing their duty in finding actual infractions under those to whom they cater. (See Exhibit D.) Apparently, that is going to have to be the job of the media and reform organizations – like Plaintiffs. In this case, Judiciocracy first reported (at undue expense) what Defendants skipped while trying to shut down Plaintiffs' speech.

81. The Plaintiffs further are losing their rights to associate with its own officers and directors based on the actions of Defendants which can only be stopped by this action.

82. Defendants have violated and will continue to violate 42 U.S.C. § 1983 when, as persons acting under the color of Illinois law deprived Plaintiffs of their rights and privileges as secured by the Constitution of the United States of America absent action of this court.

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs respectfully request that this Court:

a. Enter a judgment declaring that Defendants' actions violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution;

b. Declaring that that the speech of the Plaintiffs on their websites and letterhead or any that could reasonably be viewed attributable to them or on their behalf is that of the Plaintiffs and not that of those who owe Plaintiffs a duty;

c. And that the Defendants be barred from pursuing Plaintiffs' Officers and Directors for the speech of Plaintiffs.

d. Issue an injunction preventing Defendants from engaging in further unconstitutional conduct;

e. Award Plaintiff reasonable attorney's fees and costs under 42 U.S.C. § 1988; and

f. Grant such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: March 29, 2025

Respectfully Submitted:

*s/ Antonio Valiente*
Antonio Ernesto Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, PR 00901
Tel: +1 787 782-9544
Email: lcdoavaliente@live.com