**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Children of the Court, a non-profit corporation,** and, **Judiciocracy LLC** | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No:  1:25-cv-03387-AMP-GAF |
| v. | ) | |
| | ) | Judge April M. Perry |
| **Attorney Registration and Disciplinary Commission, Lea S. Gutierrez, and Tammy Evans, in their official capacities** | ) ) ) | |
| *Defendants*. | | |

**PLAINTIFFS CHILDREN OF THE COURT AND JUDICIOCRACY LLC'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY**
**INJUNCTION PURSUANT TO FED. R. CIV. P. 65(a)**

**TABLE OF CONTENTS**

## Table of Contents

*TABLE OF CONTENTS* ........................................................................................................... *1*

*TABLE OF AUTHORITIES* ..................................................................................................... *2*

*INTRODUCTION* ...................................................................................................................... *3*

*STATEMENT OF FACTS* ........................................................................................................ *4*

*ARGUMENT* .............................................................................................................................. *5*

    I.    **Plaintiffs Will Prevail on the Underlying Merits of the Lawsuit** ................................. **6**

    II.    **Plaintiffs Will Suffer Irreparable Harm and There Is No Adequate Remedy Absent Injunctive Relief** ..................................................................................................................... **9**

    III.    **The Balance of Harms Weighs Heavily in Favor of Granting Plaintiffs Immediate Injunctive Relief** ................................................................................................................... **11**

    IV.    **Public Policy Considerations Weigh in Favor of the Injunctive Relief Sought** .... **13**

*CONCLUSION* .......................................................................................................................... *16*

1

## TABLE OF AUTHORITIES

**CASES**

*Bates v. Little Rock*, 361 U.S. 516 (1960) .............................................................................. 7, 11

*Buckley v. Valeo*, 424 U.S. 1 (1976) ....................................................................................... 11

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)........................................ 6

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................................................... 9

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991)................................................................. 6, 8

*Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835 (7th Cir. 2023) ................................................... 5

*In re Primus*, 436 U.S. 412 (1978)........................................................................................ 11

*In re Sawyer*, 360 U.S. 622 (1959) ...................................................................................... 6, 7

*Marek v. Lane*, 571 U.S. 1003 (2013)..................................................................................... 13

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ........................................................ 7

*NAACP v. Button*, 371 U.S. 415 (1963)........................................................................... 6, 7, 12

*Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409 (7th Cir. 1956).............. 6

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ......................................................................... 7

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ......................................................................... 7

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020)....................................................... 5

*trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705 (S.D.N.Y. 2017)............................. 10, 11

*West v. Atkins*, 487 U.S. 42 (1988) ....................................................................................... 5

*West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943) ................................................ 9

*Whitney v. California*, 274 U.S. 357 (1927) ............................................................................ 14

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................................... 5

**STATUTES**

42 U.S.C. § 1983 ................................................................................................................. 4, 5, 6

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................................................................. 5

**OTHER AUTHORITIES**

L. Brandeis, *Other People's Money and How the Bankers Use It*, 89 (1914) ............................ 14

## <u>INTRODUCTION</u>

Plaintiffs Children of the Court and Judiciocracy LLC ("Plaintiffs") seek the immediate intervention of this Court to protect their First Amendment rights from ongoing interference by Defendants Attorney Registration and Disciplinary Commission ("ARDC"), Lea S. Gutierrez, and Tammy Evans, in their official capacities (collectively, "Defendants"). Defendants have targeted Plaintiffs' officer and director, Edward "Coach" Weinhaus – the organizations' key man, an Illinois-licensed attorney, for assisting in *Plaintiffs'* constitutionally protected speech and activities, including advocating for judicial reform and legal news reporting. This pursuit, including a threatened formal charge in February 2025 which were initiated 4 days after the institution of these proceedings, has chilled Plaintiffs' speech, forced Weinhaus to cease performing his duties to the Plaintiffs, and threatens to moot each of their organizational missions while constituting ongoing harm.

Judicial intervention via injunctive relief is necessary because Defendants' actions violate Plaintiffs' rights under the First and Fourteenth Amendments, as enforced through 42 U.S.C. § 1983. Without relief, Plaintiffs will suffer irreparable harm, including the loss of their ability to speak, associate, and pursue their reform efforts. Accordingly, Plaintiffs urge the Court to issue an order temporarily and preliminarily enjoining Defendants from pursuing Plaintiffs' officers, directors, and attorneys including Weinhaus, for *Plaintiffs' speech and activities*.

## STATEMENT OF FACTS

Plaintiffs are organizations dedicated to judicial reform and public accountability via publishing public information. Children of the Court, a Missouri non-profit founded in 2023 as a result of a court-approved settlement pursuant to Delaware Chancery Rule 23.1(d) (RJN III, VI, VII), advocates for court changes to prioritize children's interests in family law cases. (ECF 1, ¶¶ 1, 12-16; Chavin Affidavit ¶¶2-3; Roth Affidavit ¶ 2, 4; Deelo LaRocca Affidavit ¶ 2-3; Timpone Affidavit ¶¶ 10-17, RJN III, VI, VII, *Children of the Court et al v. Romanek et al*, N.D.Ill. 1:2024-cv-08785). Judiciocracy LLC, a Missouri limited liability company, operates legal news publications, including *ALABnews* and *AbusiveDiscretion*, reporting on judicial and attorney misconduct. (ECF 1, ¶¶2, 17-26; Timpone Affidavit ¶ 2, 22, RJN I, IV). Both rely on Weinhaus, their "key man," as executive director and CEO, respectively. (ECF 1, ¶¶ 32, 33, 48-55; Chavin Affidavit ¶¶2, 5, 6; Roth Affidavit ¶¶ 3, 5, 6; Deelo LaRocca Affidavit ¶¶ 2, 5, 6; Timpone Affidavit ¶¶ 22, 39, 42-43, 47-48).

Defendants are the ARDC, a state agency regulating Illinois attorneys, and its officials Gutierrez (Administrator) and Evans (Senior Legal Counsel), acting under color of state law. (ECF 1, ¶¶ 3-8). In 2024, Defendants began targeting Weinhaus for Plaintiffs' speech, sparked by a complaint from Judge Regina A. Scannicchio about Judiciocracy's reporting on the "Paris Divorce Case." (ECF 1, ¶¶ 27-30; RJN II; Timpone Affidavit ¶ 25). Despite Judge Scannicchio's refusal (or inability) to defend the false claims in her complaint (RJN III, VI), Defendants pursued Weinhaus, culminating in a June 13, 2024, sworn statement in Springfield, Illinois, a February 2025 announcement of intent to file formal charges ("Charge Pursuit"). (ECF 1, ¶¶ 35, 39), and an April 2025 charging document filed after the instant action commenced. (RJN I; Timpone Affidavit ¶¶ 33, 37.)

Defendants' actions have halted Weinhaus' work, chilling Plaintiffs' speech and grinding much of their operations to a halt. (Chavin Affidavit ¶ 6; Roth Affidavit ¶¶ 5-6 ; Deelo LaRocca Affidavit ¶¶ 5-6 ;  Timpone Affidavit ¶¶ 42-43.) Judiciocracy ceased the bulk of its investigation into Cook County judicial bribery[1] which are alleged in complaints (by unrelated parties) before the Northern District of Illinois, and Children of the Court froze its letter campaigns. (ECF 1, ¶¶ 37-43) Timpone Affidavit ¶¶ 35-39; Chavin Affidavit ¶ 6; Roth Affidavit ¶ 6 ; Deelo LaRocca Affidavit ¶ 6). This has caused significant harm, including the inability to fulfill their missions. (ECF 1, ¶¶ 55-60; Roth Affidavit ¶ 6; Deelo LaRocca Affidavit ¶ 6;  Timpone Affidavit ¶¶ 42-43). On March 30, 2025, Plaintiffs filed their Complaint, alleging a violation of their First Amendment rights under § 1983. (ECF 1, ¶¶ 68-82).

## **ARGUMENT**

A preliminary injunction is an extraordinary remedy requiring the movant to show: (1) a likelihood of success on the merits; (2) irreparable harm absent relief; and (3) no adequate remedy at law. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "If the [movant] makes this showing, the court weighs the harm of denying an injunction to the [movant] against the harm to the defendant of granting one.  This balancing test is done on a sliding scale: 'If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor.'  In balancing the harms, the court also considers the public interest."  *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). Here, all factors favor injunctive relief because Plaintiffs are threatened with

---

[1] The undersigned is reporting what is in the public record filed by others and like Plaintiffs is careful not to make its accusations of judicial impropriety public absent the type of research currently being impeded by Defendants.

serious irreparable harm; the balance of harms weighs heavily in favor of granting the injunction; and any public policy considerations favor permitting Plaintiffs to continue their reform activities and grant the injunctive relief sought.

## I.      Plaintiffs Will Prevail on the Underlying Merits of the Lawsuit

Plaintiffs must demonstrate a likelihood of success beyond a "mere possibility," though not definitive proof. *Grubhub*, 80 F.4th at 843-44. Here, Plaintiffs are likely to succeed on their § 1983 claim because Defendants, acting under color of state law, violated Plaintiffs' First Amendment rights to free speech and association. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (requiring a constitutional deprivation by state actors). Defendants targeted key man Weinhaus to suppress Plaintiffs' speech, a core First Amendment activity encompassing news reporting and advocacy, rights equally held by organizations like the Plaintiff companies. U.S. Const. amend. I; *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

The speech at issue—appearing on Plaintiffs' websites and tied to their missions—is unmistakably theirs, not Weinhaus', their officer and director. (RJN I, III; Chavin Affidavit ¶¶ 2, 3, 7; Roth Affidavit ¶ 4; Deelo LaRocca Affidavit ¶ 4; Timpone Affidavit ¶¶16-23, 26-32.) This Circuit has long held that officers and directors are not personally liable for organizational speech absent a special showing, which Defendants have not made nor could they at the preliminary injunction stage. *Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409, 414 (7th Cir. 1956). Not only is it impermissible to attribute Plaintiffs' speech to Weinhaus to stifle the speech because they hired a lawyer subject to the ARDC's reach; but, even if it was permissible, that does not change the speech's protected status. Organizations may rely on staff, including attorneys, to advance their missions without forfeiting constitutional protections. *NAACP v. Button*, 371 U.S. 415, 439 (1963) ("A State may not, under the guise of prohibiting

professional misconduct, ignore constitutional rights."). Weinhaus had no cases before the judges criticized, further undermining Defendants' basis for scrutiny. RJN I, III, VI, VIII; *Farah v. Double M. Express, Inc.*, Case #1:24-cv-01757 N.D.Ill. ECF #4-1, Exhibit to Corrected Motion for Pro Hac Vice (*granted*)).

*In re Sawyer*, 360 U.S. 622 (1959), illustrates the limits of state authority over attorney speech. There, the majority ruled that Hawaii could *not* discipline an attorney for criticizing judicial proceedings during active litigation. Tellingly, Justice Frankfurter's dissent, arguing *for* discipline due to the case's pendency, still recognized that lawyers retain free speech rights outside pending matters—a boundary Defendants far exceed here. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1072 (1991) (Chief Judge Rehnquist, citing Justice Frankfurter's dissent in *Sawyer*: "Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial…He is an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense.") (*Sawyer* at 666, 668, Frankfurter, J. dissenting). Defendants' pursuit of Weinhaus for Plaintiffs' judicial reform advocacy, unrelated to his legal practice or the quality of his advice, reflects viewpoint discrimination; Defendants' ignore similar attorney speech unrelated to the judiciary. (Timpone Affidavit ¶ 20). This content-based restriction further violates the First Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Defendants' actions also impair Plaintiffs' associational rights by chilling Weinhaus' role as a key officer, frustrating Plaintiffs' missions. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984); (ECF 1, ¶¶ 55-57). The Springfield Statement and Charge Pursuit (and now Charge) reveal Defendants' intent to block *Plaintiffs'* speech by threatening and indeed punishing

Weinhaus. (ECF 1, ¶¶ 35-39); RJN I, Chavin Affidavit ¶¶ 5-6; Roth Affidavit ¶¶ 5-6; Deelo LaRocca Affidavit ¶¶ 5-6).

Moreover, *Button* reinforces Plaintiffs' claim. In *Button*, the Supreme Court invalidated a Virginia law targeting the NAACP's litigation advocacy and affirmed that associations may sue to shield their attorneys from discipline that threatens expressive and associational freedoms. 371 U.S. at 439 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958); *Bates v. Little Rock*, 361 U.S. 516, 524 (1960)). These Supreme Court cases establish that state action requires a *compelling* justification but there is none here – Defendants' simply wish to curtail Plaintiffs' judicial reform and oversight activities because the speech mentioned judges. Further, Weinhaus has no pending case which would be impacted by his speech on behalf of the organization; and Weinhaus is not engaged in any attorney advertising. *Gentile* at 1034.

Finally, Defendants' complaint against Plaintiffs' key man interferes with Plaintiffs' ability to *associate*. Weinhaus fulfilled his obligations to Plaintiffs and worked within the scope of his duties. (Chavin Affidavit ¶¶ 2; Roth Affidavit ¶ 3; Deelo LaRocca Affidavit ¶ 2 5-6; Timpone Affidavit ¶¶21-23, 25, 30). Permitting the Defendants the ability to punish Weinhaus for his work for Plaintiffs creates a *Hobson's choice* whereby Defendants can force *any* lawyer to choose between their legal and fiduciary obligations to a company who they serve zealously, and personal liability from having upset the friends of the ARDC. RJN V (Rules 1.1, 1.3, 1.13 (requiring attorneys to serve the Plaintiffs with Competence and Diligence at his own personal risk). That is, the Defendants demand Plaintiffs' attorney takes risks in serving them or risk their punishment. Rule 1.3 Comment 1. Here, everyone agrees the Plaintiffs' attorney did just that. But he faces personal risk from the ARDC for doing the job well. Rules 1.1, 1.13. In a "damned if you do, damned if you don't" read of the law, if the ARDC doesn't like the organizations'

speech, they can go after the attorney especially if she is competent and diligent. The state may not create a Hobson's Choice for First Amendment rights. *Spence v. Bailey*, 465 F.2d 797, 800 (6th Cir. 1972) (citing *Button* at 341).

Defendants thus prevent Plaintiffs from being able to associate freely with their chosen leadership, particularly a lawyer who can protect the organizations from liability. In effect, the only thing the Defendants have proven is that the Plaintiffs' key man *shielded* the organizations so well from liability, that their only recourse for speech they don't like is to attack their key man for doing it. This is overreach - because the speech is about judges - to force a favorable speech policy only, circumventing all tort laws. See *West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943). A read of Defendants' Complaint against Plaintiffs' key man the absence of even a hint of a tortious claim against the Plaintiffs. The entire exercise for the Defendants is barking up the wrong tree because they can't climb this one. The Plaintiffs here have exercised their free speech with their key man's help which they are losing.  This irreparable harm bolsters their likelihood of success on the merits.

## II.    Plaintiffs Will Suffer Irreparable Harm and There Is No Adequate Remedy Absent Injunctive Relief

Irreparable harm is a threshold requirement and met when legal remedies are inadequate to compensate a plaintiff for the injuries suffered. *Life Spine*, 8 F.4th at 545. The loss of First Amendment freedoms, *even briefly*, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Defendants' actions have already curtailed Plaintiffs' speech and threaten their existence to say nothing of endangering their missions and existences (also evidenced herein).

Since Defendant began their campaign of harassment and intimidation against Plaintiffs' key man, executive, director (and attorney) Weinhaus, he has had to significantly curtail his services to Plaintiffs.  Judiciocracy was forced to limit its investigations into judicial bribery and

has had to find extra assistance to conduct its normal operations but not to the level Weinhaus could do because he is also an *attorney*. Children of the Court has had to suspend its advocacy campaigns. Weinhaus' inability to perform his duties to the *organizations* —due to the Defendants' actions—has muted Plaintiffs' voices and nullifies their missions. Plaintiffs have each modified their behavior based on the key man's respect for the ARDC proceedings to which he owes a duty. Plaintiffs are sustaining real and serious harm.

The new ARDC Complaint requires Weinhaus to continue to limit his performance of his duties with the Plaintiffs in some form or another. In that environment, Weinhaus will be tasked by the ARDC of making the above-referenced *Hobson's Choice*: a) conforming with their unconstitutional overreach and interpretation of the Plaintiffs' speech; or b) lose his license for performing his duties at the top level (such that Plaintiffs can never have a license-holder).

However, the Plaintiffs have no ability to present *their* case within that proceeding to advocate for the Plaintiffs' speech. At best, Weinhaus can continue to offer it as a defense. (RJN VI). But Weinhaus will, like most attorneys, face a lengthy and expensive proceeding, pressured to "deal," and accept "blame" and limitations purportedly controlling him, but actually intended to control *Plaintiffs for Plaintiffs' speech*. That's the point – curtailing Plaintiffs' speech. Plaintiffs will suffer the continued and irreparable harm of allowing the ARDC to monitor all of the attorneys who work with them, without limit, should the Court fail to enjoin Defendants. It is without question that the Defendants have already made the distinction that they can only control Plaintiffs' speech via its attorney – Weinhaus. RJN I. Nobody has filed any action against Plaintiffs to remove speech the Defendants, inexplicably, lump in with fraud or deception. Its not.

This harm is real, ongoing, and unquantifiable because monetary damages cannot restore lost speech, reform opportunities, or an improved judiciary (in the midst of judicial bribery allegations or otherwise).(Chavin Affidavit ¶ 4). Absent injunctive relief, Plaintiffs face existential threats, which courts recognize as irreparable. *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 727 (S.D.N.Y. 2017); (Chavin Affidavit ¶ 6; Roth Affidavit ¶ 6; Deelo LaRocca Affidavit ¶ 6; Timpone Affidavit ¶ 40.)

### III.     The Balance of Harms Weighs Heavily in Favor of Granting Plaintiffs Immediate Injunctive Relief

The Court evaluates the balance of harms on a sliding scale, comparing Plaintiffs' injuries to Defendants'. *Life Spine*, 8 F.4th at 539. The balance strongly favors Plaintiffs. Without injunctive relief, Plaintiffs face irreparable harm to their First Amendment rights and operational capacity, as Defendants' targeting of Weinhaus—their key officer—frustrates and obstructs their judicial oversight and reform missions. Enjoining Defendants from disciplining Weinhaus for *Plaintiffs' speech* imposes no legitimate harm on Defendants, merely halting unconstitutional conduct while preserving Defendants' authority over his legal practice, *et cetera* (e.g., crimes). (ECF 1, ¶ 62). This disparity mirrors *trueEX*, where minimal defendant harm justified relief against severe plaintiff injury. 266 F. Supp. 3d at 726.

Defendants' actions face exacting scrutiny, as they infringe on core First Amendment rights by pursuing Weinhaus for Plaintiffs' expressive activities. *In re Primus*, 436 U.S. 412, 432 (1978) (citing *Buckley v. Valeo*, 424 U.S. 1, 44-45 (1976)). In *Primus*, the Court struck down discipline of an ACLU attorney for soliciting litigation, requiring the state to show "a subordinating interest which is compelling", with means "closely drawn to avoid unnecessary abridgment of associational freedoms." *In re Primus* at 432 (citing *Bates v. Little Rock*, 361 U.S. 516, 524 (1960)) and *Buckley*, 424 U.S. at 25). The Court has further clarified that the state's

"special interest" in regulating attorneys is *limited*. With no active case involving Weinhaus before the criticized judges, and no evidence of commercial solicitation, Defendants lack *any* recognized compelling interest, particularly because the clients, Plaintiffs, appear pleased with assuring their protection from liability. As Justice Kennedy wrote in *Gentile*:

> "Petitioner engaged not in solicitation of clients or advertising for his practice, as in our precedents from which some of our colleagues would discern a standard of diminished First Amendment protection. His words were directed at public officials and their conduct in office. **There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment.**" *Gentile* at 1034 (emphasis added).

That's the only speech the Defendants seem to care about here. (RJN I.). But as they may care about Weinhaus' 'amazing advertising' (no citations available) or speech during the pendency of a matter (no citations available), nothing in the Motion affects the Defendants' ability to do so. Targeting Weinhaus for Plaintiffs' non-commercial speech—unrelated to his legal practice (all conforming with Rules 1.1, 1.3, 1.13 and any other known rule)—lacks a tailored basis and broadly burdens the organization's expressive and associational rights. The only interest Defendants have is the silencing of *organizations* actively involved in reform and oversight activities – speech – clearly protected by the First Amendment. One Plaintiff organization (Children of the Court) was *created* by the very judge complaining (RJN III) and the other as a result of a filing with the Missouri Secretary of State. (RJN III, RJN IV). It's not like the Defendants don't know this. The Plaintiffs get prime billing in the ARDC Complaint. (RJN I).

As established *supra*, *NAACP v. Button*, 371 U.S. 415, 439 (1963), reinforces that states cannot mask constitutional violations as regulation without a legitimate purpose, a principle *Primus* echoes. The First Amendment's protection of all viewpoints further undermines Defendants' overreach into at best mild indirect criticism or lofty praise of a judge. *Button*, 371

U.S. at 444-45. Absent a litigation-related or commercial justification, Defendants' actions merely penalize Plaintiffs' *missions*, tilting the balance decisively toward immediate relief.

## IV.    Public Policy Considerations Weigh in Favor of the Injunctive Relief Sought

The public interest favors protecting free speech and judicial accountability. Plaintiffs' work—exposing misconduct and advocating reform—serves the public by enhancing transparency. (ECF 1, ¶¶ 12-26, 80). In truth, it is the public who is harmed by the inability to hear Plaintiffs' stifled speech and worse yet, their continued exposure to an unreformed judicial system. Silencing Plaintiffs via their key man not only prevents reform of the judiciary but makes it appear that the Defendants, an arm of Illinois' judiciary, are scared of Plaintiffs' fact-based critiques courtesy of the helpf of their attorney and key man.

The Defendants' *desperate* attempts to stifle Plaintiffs is evident from their charges: a) effusively complimenting a judge, putting this information on – ahem – the wrong *page* while adequately describing his enforcement role; and b) describing the legal consequence of his own orders truthfully about judicial experience in case assignment. (RJN I). The wrong page? Indirect critique of judicial experience? (RJN I). This is the compelling interest that must be halted because a lawyer, the key man, helped the organizations speak. The Defendants' largest beef seems to be that nobody involved other than Plaintiffs' Declarant Timpone understands the consequence of Delaware Rule 23.1(d), which touches on a matter of serious public import[2].

---

[2] The Defendants' position that a *cy pres*-like award (Delaware Chancery Court Rule 23.1 settlement review is analogous) creating an organization from the bench isn't a matter of fair public commentary and interest is shocking as to wonder if they have read Mr. Cleys' unrebutted response. But, in case they haven't they might be soothed by the words of Chief Justice Roberts if enjoined from stifling Plaintiffs' speech:

> Marek's challenge is focused on the particular features of the specific *cy pres* settlement at issue. Granting review of this case might not have afforded the Court an opportunity to address more **fundamental concerns surrounding the use of such remedies** in class

This exercise in attacking Plaintiffs' key man lowers the esteem for the judiciary and the State of Illinois rather than allowing the First Amendment to provide its "disinfectant" through "more speech."[3] See RJN VI citing Justice Brandeis (L. Brandeis, *Other People's Money and How the Bankers Use It*, 89 (1914) (originally appearing in *Harper's Bazaar*); *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J. concurring).

Enjoining Defendants upholds the First Amendment, a cornerstone of democracy, while their actions undermine public trust by silencing even tepid criticism or enthusiastic praise. While the complaining judge was busy taking offense, she was overlooking serious abuse in the very case, on the very rule, cited in the article. (RJN II). Then, to compound the error, so did Defendants. *Id*. Stopping the Defendants in their tracks while they are going down a *rights-stifling* overreach path against Plaintiffs' key man instead of a *righteous* enforcement action (or, at least an investigation) is to everyone's benefit. The oversite they are skipping out on is related

---

action litigation, including when, if ever, such relief should be considered; how to assess its fairness as a general matter; **whether new entities may be established** as part of such relief; if not, how existing entities should be selected; **what the respective roles of the judge and partiesare in shaping a *cy pres* remedy**; how closely the goals of any enlisted organization must correspond to the interests of the class; and so on. This Court has not previously addressed any of these issues. *Cy pres* remedies, however, are a growing feature of class action settlements. See Redish, Julian, & Zyontz, *Cy Pres* Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis, 62 Fla. L. Rev. 617, 653-656 (2010). In a suitable case, this Court may need to clarify the limits on the use of such remedies.

*Marek v. Lane*, 571 U.S. 1003, 1006 (2013) (Roberts, CJ, in statement respecting denial of *certiorari*) (emphasis added).

[3] It is evident that the judges involved have no actual claims against anyone, but instead are using their authority and self-protected arm of the Judicial Branch's speech police force – the Defendants herein – to squash speech and criticism. These matters will likely be factually buttressed through further discovery which will require subpoena of the Defendants and Plaintiffs' key man at the least due to his inability to assist this action absent risk of helping the organizations to whom he owes duties. He would face further discipline from Defendants as an "aggravating factor" for helping the Plaintiffs, even though the Plaintiffs contend he has a duty to do so.

to a public record confirmed instance of an attorney's breach of duty to his former client (who sat in jail at the time away from his seven children). Id. Assisting in the improvement of attorney ethics in Illinois in the face of a serious documented breach would be a true service. The only problem is that the complaining judge seems to not mind about that! It would seem an outlandish suggestion, but the jailed man and those like him might be the ones who deserve the protection from those in power. That's the precise speech Defendants are stifling.

Defendants no doubt will wrap themselves in the shroud of "protecting the legal profession" as a public good. The injunctive relief forbids none of that. If the *practice of law* were at issue (ie Rules 1.1, 1.3, 1.13 in the key man's service to Plaintiffs), Plaintiffs' key man would be exposed to a malpractice complaint or failure to perform his duties to a client, or any other number of wrongs which are rightly subject to the ARDC's oversight. The Defendants are actually punishing an attorney for *fulfilling* his duty because their issue is with the content of Plaintiffs speech, speech they want stifled. They face no liability thus the ARDC are being used, ironically, for attacking the attorney for advising his clients *too well*. (Timpone Affidavit ¶¶ 19, 27-29.)


The ARDC cannot be stopped from disciplining *bad lawyering* or bad lawyers through an injunction nor should it. But they should be stopped from pursuing competent lawyering that both assisted Plaintiffs' missions and protected them from liability as evident here. The Defendants' own charges admit they have no basis for pursuit of Plaintiffs' key man other than content related to Plaintiffs' websites and communications. RJN I. Nothing requested in the Motion prevents Defendants from pursuing charges *unrelated* to Plaintiffs' speech, including irresponsible behavior.

**<u>CONCLUSION</u>**

For the reasons above, the Court should grant Plaintiffs' Motion for Preliminary

Injunction Pursuant to Fed. R. Civ. P. 65(a) and enter an order:

    a.  Temporarily and preliminarily enjoining Defendants from pursuing Plaintiffs' officers

        and directors, including Edward "Coach" Weinhaus, for the speech and activities of

        Plaintiffs; and

    b.  Requiring Defendants to preserve all relevant evidence concerning the factual allegations

        and claims in the Complaint.

Dated: April 20, 2025            Respectfully Submitted:

                                        *s/ Antonio Valiente*
                                        Antonio Ernesto Valiente-Rivera
                                        N.D. Ill. Gen. Bar No.: 12326
                                        Torre de La Reina - Suite 203
                                        450 Avenida de La Constitucion
                                        San Juan, PR 00901
                                        Tel: +1 787 782-9544
                                        Email: lcdoavaliente@live.com