## Nat'l Inst. of Fam. & Life Advocates v. James

United States Court of Appeals for the Second Circuit

June 24, 2025, Argued; December 1, 2025, Decided

No. 24-2481-cv

**Reporter**
2025 U.S. App. LEXIS 31078 *; 2025 LX 576501; __ F.4th __; 2025 WL 3439256

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, GIANNA'S HOUSE, INC., CHOOSE LIFE OF JAMESTOWN, INC., DOING BUSINESS AS OPTIONS CARE CENTER, Plaintiffs-Appellees, - v. - LETITIA JAMES, Defendant-Appellant.[*]

**Prior History:** Defendant-Appellant New York State Attorney General Letitia James (the "Attorney General") appeals an order, entered on August 22, 2024, by the United States District Court for the Western District of New York (John L. Sinatra, Jr., Judge), granting the motion for a preliminary injunction filed by Plaintiffs-Appellees National Institute of Family and Life Advocates ("NIFLA"), Gianna's House, Inc. ("Gianna's House"), and Choose Life of Jamestown, Inc., doing business as Options Care Center ("Options Care Center") (collectively, the "NIFLA plaintiffs"). The NIFLA plaintiffs are non-profit, faith-based organizations that have made, and seek to continue to make, statements regarding abortion pill reversal (also known as "APR"), a protocol meant to counteract the effects of an abortion induced via oral medication. The NIFLA plaintiffs allege that, because the Attorney General has initiated a civil enforcement action in New York state court against entities not involved in this lawsuit for making statements that are the same as, or substantially similar to, statements the NIFLA plaintiffs have made, or wish to make, the NIFLA plaintiffs face a threat of sanctions if they continue to engage **[*2]** in this speech, and thus, have stopped doing so to avoid any liability. To prevent the Attorney General from regulating their speech, the NIFLA plaintiffs brought this action for declaratory and injunctive relief, asserting that the regulation of their APR-related statements violates their First and Fourteenth Amendment **[*1]** rights.

In granting the motion for a preliminary injunction, the district court first addressed the Attorney General's threshold argument that it should abstain from exercising federal jurisdiction over this case pursuant to, among other doctrines, the abstention doctrine enumerated in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The district court concluded that abstention was not warranted under Younger because the issues in the instant case are not inextricably intertwined with the issues in the Attorney General's state civil enforcement action, and the federal case would not interfere with that state proceeding. With respect to the merits, the district court first determined that the NIFLA plaintiffs were likely to succeed on the merits of their First Amendment claim because their APR-related statements are noncommercial speech, and the Attorney General has not satisfied her burden to show that the efforts by the State of New York (the "State") **[*3]** to restrict the speech would survive strict scrutiny. The district court

---

[*] The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this opinion.

Edward Weinhaus

then concluded that, among other reasons, because the NIFLA plaintiffs have likely suffered a constitutional injury, the other preliminary injunction requirements were satisfied.

As an initial matter, we conclude that abstention under the Younger doctrine is not warranted because, as the district court correctly determined, the NIFLA plaintiffs' claims in the instant action are not inextricably intertwined with the claims at issue in the Attorney General's enforcement action, and the NIFLA plaintiffs' federal case does not interfere with that state proceeding. We also conclude that the district court did not abuse its discretion in granting the preliminary injunction. Specifically, we agree with the district court that the NIFLA plaintiffs have demonstrated, at this juncture and on this record, that they are likely to succeed on their First Amendment claim because their APR-related statements are noncommercial speech, and the Attorney General has not met her burden to demonstrate the State's regulatory conduct can survive strict scrutiny. The district court correctly determined that the speech at issue is noncommercial because, **[*4]** based on the uncontroverted evidence in the current record, the speech is religiously and morally motivated, the NIFLA plaintiffs receive no remuneration or other financial benefit for engaging in it, and, as the NIFLA plaintiffs do not provide APR themselves, the speech serves only to provide the public with information about APR and access to third-party providers that can offer APR. We also discern no error in the district court's determination that, given that the NIFLA plaintiffs will likely establish that they have suffered a constitutional injury, the remaining preliminary injunction requirements have been met.

Accordingly, we AFFIRM the order of the district court.

Nat'l Inst. for Fam. & Life Advocates v. James, 746 F. Supp. 3d 100, 2024 U.S. Dist. LEXIS 150635 (Aug. 22, 2024)

**Counsel:** FOR DEFENDANT-APPELLANT: JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Andrea Oser, Deputy Solicitor General, on the brief), for Letitia James, Attorney General, State of New York, Albany, New York.

FOR PLAINTIFFS-APPELLEES: CAROLINE C. LINDSAY (John J. Bursch, Erin M. Hawley, James A. Campbell, Erik Baptist, and J. Caleb Dalton, on the brief), Alliance Defending Freedom, Washington, District of Columbia, and Landsdowne, Virginia.

**Judges:** Before: BIANCO, LEE, and NATHAN, Circuit **[*5]** Judges.

**Opinion by:** JOSEPH F. BIANCO

# Opinion

JOSEPH F. BIANCO, *Circuit Judge*:

Defendant-Appellant New York State Attorney General Letitia James (the "Attorney General") appeals an order, entered on August 22, 2024, by the United States District Court for the Western District of New York (John L. Sinatra, Jr., *Judge*), granting the motion for a preliminary injunction filed by Plaintiffs-Appellees National Institute of Family and Life Advocates ("NIFLA"), Gianna's House, Inc. ("Gianna's House"), and Choose Life of Jamestown, Inc., doing business

as Options Care Center ("Options Care Center") (collectively, the "NIFLA plaintiffs"). The NIFLA plaintiffs are non-profit, faith-based organizations that have made, and seek to continue to make, statements regarding abortion pill reversal (also known as "APR"), a protocol meant to counteract the effects of an abortion induced via oral medication. The NIFLA plaintiffs allege that, because the Attorney General has initiated a civil enforcement action in New York state court against entities not involved in this lawsuit for making statements that are the same as, or substantially similar to, statements the NIFLA plaintiffs have made, or wish to make, the NIFLA plaintiffs **[*6]** face a threat of sanctions if they continue to engage in this speech, and thus, have stopped doing so to avoid any liability. To prevent the Attorney General from regulating their speech, the NIFLA plaintiffs brought this action for declaratory and injunctive relief, asserting that the regulation of their APR-related statements violates their First and Fourteenth Amendment rights.

In granting the motion for a preliminary injunction, the district court first addressed the Attorney General's threshold argument that it should abstain from exercising federal jurisdiction over this case pursuant to, among other doctrines, the abstention doctrine enumerated in *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The district court concluded that abstention was not warranted under *Younger* because the issues in the instant case are not inextricably intertwined with the issues in the Attorney General's state civil enforcement action, and the federal case would not interfere with that state proceeding. With respect to the merits, the district court first determined that the NIFLA plaintiffs were likely to succeed on the merits of their First Amendment claim because their APR-related statements are noncommercial speech, and the Attorney General has not satisfied her burden to show that **[*7]** the efforts by the State of New York (the "State") to restrict the speech would survive strict scrutiny. The district court then concluded that, among other reasons, because the NIFLA plaintiffs have likely suffered a constitutional injury, the other preliminary injunction requirements were satisfied.

As an initial matter, we conclude that abstention under the *Younger* doctrine is not warranted because, as the district court correctly determined, the NIFLA plaintiffs' claims in the instant action are not inextricably intertwined with the claims at issue in the Attorney General's enforcement action, and the NIFLA plaintiffs' federal case does not interfere with that state proceeding. We also conclude that the district court did not abuse its discretion in granting the preliminary injunction. Specifically, we agree with the district court that the NIFLA plaintiffs have demonstrated, at this juncture and on this record, that they are likely to succeed on their First Amendment claim because their APR-related statements are noncommercial speech, and the Attorney General has not met her burden to demonstrate the State's regulatory conduct can survive strict scrutiny. The district court correctly determined **[*8]** that the speech at issue is noncommercial because, based on the uncontroverted evidence in the current record, the speech is religiously and morally motivated, the NIFLA plaintiffs receive no remuneration or other financial benefit for engaging in it, and, as the NIFLA plaintiffs do not provide APR themselves, the speech serves only to provide the public with information about APR and access to third-party providers that can offer APR. We also discern no error in the district court's determination that, given that the NIFLA plaintiffs will likely establish that they have suffered a constitutional injury, the remaining preliminary injunction requirements have been met.

Accordingly, we **AFFIRM** the order of the district court.

## BACKGROUND

This case concerns statements that certain non-profit organizations that provide services and resources related to pregnancy and parenthood have made, or wish to make, about a protocol intended to counteract the effects of an abortion induced by oral medication.

A woman may seek to have a medication-induced abortion by first taking a dose of mifepristone followed by a dose of misoprostol 24 to 48 hours later. The dose of mifepristone is designed to block the [*9] body's progesterone receptors. Progesterone is a hormone critical to maintaining a pregnancy, and, by blocking its receptors, mifepristone can prevent the pregnancy from continuing. Once the progesterone receptors have been blocked, effectively ending the pregnancy, the dose of misoprostol induces the uterus to expel its contents. If a woman has begun a medication-induced abortion by taking mifepristone, but has not yet taken misoprostol and decides she would like to continue her pregnancy, she may take progesterone supplements in an attempt to counter the effects of the mifepristone. The theory is that the progesterone supplements can increase the woman's progesterone levels to such a degree that the effects of mifepristone are neutralized. This use of progesterone is called "abortion pill reversal" or "APR."[1]

On May 6, 2024, the State commenced a civil enforcement action in New York state court against Heartbeat International, Inc. ("HBI"), an entity that maintains a network of non-profit organizations that make statements about APR, and eleven of its member organizations (collectively, the "HBI defendants"), for violating various provisions of New York's General Business Laws, N.Y. Gen. Bus. Laws §§ 349, 350, and for fraud. *See People of the State of New York v. Heartbeat Int'l, Inc.*, Index No. 451314/2024 (N.Y. Sup. Ct. N.Y. Cnty. May 6, 2024) (the "HBI [*10] Enforcement Action").[2] More specifically, the State alleged that the HBI defendants' statements made on their websites, social media, and other sources about APR were false or misleading because they misrepresented the efficacy and safety of APR. The State further alleged that, among these other sources, statements were made on abortionpillreversal.com and the APR hotline, which are resources owned and operated by HBI, through which women can receive information about APR and connect with medical providers and organizations in the Abortion Pill Rescue Network ("APRN") that will provide APR. The APRN is also owned and operated by HBI. The State also asserts that these statements induced individuals to undergo APR either at one of the HBI defendants' facilities or by way of a referral to another member of the APRN.

Plaintiffs in the instant actions are the National Institute of Family and Life Advocates ("NIFLA"), Gianna's House, Inc. ("Gianna's House"), and Choose Life of Jamestown, Inc. doing business as Options Care Center ("Options Care Center") (collectively, the "NIFLA plaintiffs"). NIFLA is a

---

[1] The parties dispute whether APR is an effective and safe protocol, and they submitted evidence, including expert materials, on this issue in connection with the NIFLA plaintiffs' motion for declaratory and injunctive relief related to arguments regarding whether the NIFLA plaintiffs' APR statements are false and misleading. However, for the reasons explained in Section II.A *infra*, we need not and do not resolve this dispute in this appeal.

[2] We may take judicial notice of the complaint filed in the HBI Enforcement Action. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

non-profit, faith-based organization and a non-denominational Christian ministry. NIFLA [*11] is opposed to abortion and maintains a network of pregnancy centers. Gianna's House and Options Care Center, both non-profit, Christian organizations, are members of NIFLA's network. NIFLA provides education, training, and support regarding parenthood and pregnancy, and has made statements regarding, and has provided information about, APR. NIFLA's member organizations offer free services, such as pregnancy tests, counseling, and support for parents. For example, Gianna's House offers a variety of free services, including pregnancy tests, counseling, parental education classes, post-abortion support, and referrals for related services.[3] Similarly, Options Care Center provides free services, such as pregnancy tests, parental education, and post-abortion care and support.[4] NIFLA members, including Gianna's House and Options Care Center, do not provide APR. Instead, they "refer clients interested in this service to physicians who prescribe it." Joint App'x at 15, ¶ 34. NIFLA members, including Gianna's House and Options Care Center, receive no remuneration or financial benefits for these referrals.

The NIFLA plaintiffs allege they have made religiously and morally motivated [*12] statements about APR on their website, social media, and in other materials that they contend are either the same as, or substantially similar to, the statements made by the HBI defendants at issue in the HBI Enforcement Action. For example, these statements include: (1) "if you have recently taken the abortion pill and are having regret, it may be possible to undo the effects of abortion drugs. Learn more here," Joint App'x at 41-42, ¶ 208 (alteration adopted) (internal quotation marks omitted); (2) "Progesterone . . . has been used to support pregnancies with a risk of miscarriage for decades[.] . . . [I]f you've taken the first [dose of mifepristone] and had doubts or changed your mind, you still have a chance to save your pregnancy!," Joint App'x at 45, ¶ 225 (internal quotation marks omitted); and (3) links to abortionpillreversal.com, the APR hotline, and the APRN webpage, Joint App'x at 39, ¶ 189; 42, ¶ 213; 44, ¶ 221. However, the NIFLA plaintiffs allege they have taken down statements like these and others about APR and have not made additional statements because, in light of the State's decision to bring an enforcement action against the HBI defendants, they "fear[] similar [*13] retaliatory action and punishment" from the Attorney General, Joint App'x at 36, ¶ 171, which could result in sanctions, including "injunctive relief, restitution, damages, civil penalties, [or] auditing and compliance review," Joint App'x at 12, ¶ 12 (internal quotation marks and citation omitted).

As a result of these concerns, on May 24, 2024, the NIFLA plaintiffs filed a complaint and motion for declaratory judgment and injunctive relief against the Attorney General to enjoin her from "targeting, chilling, and punishing Plaintiffs' speech about [APR]," and to declare that any

---

[3] We note that the complaint alleges that Gianna's House has partnered with "affiliated" medical professionals "to soon refer for on-site, limited diagnostic ultrasounds to confirm pregnancy and gestational age and *potentially* to administer progesterone treatment." Joint App'x at 17, ¶¶ 52, 53 (emphasis added). However, based on the current record, there is no evidence that, at this time, any third-party medical professional offers APR at Gianna's House.

[4] Options Care Center allegedly "partners with volunteer medical professionals to refer for no-cost, on-site services such as ultrasounds, limited sexually transmitted infection testing and treatment, and progesterone treatment." Joint App'x at 18, ¶ 65. However, the complaint explicitly alleges that Options Care Center—like NIFLA's other New York members—does not provide APR. *See* Joint App'x at 15, ¶ 34.

attempt to regulate their speech "violate[s] Plaintiffs' First and Fourteenth Amendment rights to speak freely, to practice their religion, and to due process under the law." Joint App'x at 13, ¶ 17.

On August 22, 2024, the district court granted the NIFLA plaintiffs' motion for a preliminary injunction. *See generally* Nat'l Inst. for Fam. & Life Advocs. v. James, 746 F. Supp. 3d 100 (W.D.N.Y. 2024). The district court first addressed the Attorney General's threshold argument that, because of the HBI Enforcement Action, abstention in the federal case was warranted pursuant to Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The district court concluded that *Younger* abstention was unwarranted here because the NIFLA plaintiffs' claims are not inextricably intertwined **[*14]** with the claims of the HBI defendants in the HBI Enforcement Action and because the NIFLA plaintiffs did not seek to interfere with the state case by requesting a stay or injunction of that action, but instead sought to vindicate their own independent First Amendment rights.[5] As for the First Amendment claim, the district court concluded that the NIFLA plaintiffs were likely to succeed on its merits because regulating the NIFLA plaintiffs' APR-related statements constituted content and viewpoint-based regulation of noncommercial speech that cannot survive strict scrutiny. In particular, the district court determined that, on the current record, the speech was noncommercial because of the uncontroverted evidence that the statements by the NIFLA plaintiffs were not economically motivated, the NIFLA plaintiffs do not provide APR and only refer individuals to third-party providers, including those in the APRN, who could then administer APR, and they received no remunerations for their services, including no referral fees or commissions. Because the district court determined that the NIFLA plaintiffs' speech was noncommercial, it then assessed whether the State's regulatory conduct survived strict scrutiny and concluded **[*15]** that the record "is devoid of anything to suggest that this standard could be met." Nat'l Inst. for Fam. & Life Advocs., 746 F. Supp. 3d at 121. The district court further concluded that, because the NIFLA plaintiffs likely suffered a constitutional injury, the remaining preliminary injunction requirements were satisfied. This appeal followed.[6]

## DISCUSSION

The Attorney General contends that the district court erred by exercising federal jurisdiction over this case and not abstaining pursuant to the *Younger* doctrine. She further asserts that the district court erred in awarding a preliminary injunction because, among other reasons, the NIFLA plaintiffs' speech is commercial speech that can be the subject of government regulation. For the reasons set forth below, we conclude the district court was correct to exercise its jurisdiction over this case because the Younger doctrine does not apply, and the district court did not abuse its discretion by granting the NIFLA plaintiffs' request for a preliminary injunction.

---

[5] The district court also rejected the Attorney General's arguments that abstention was warranted under the *Colorado River* and *Pullman* abstention doctrines, as well as under the Declaratory Judgment Act. The Attorney General does not challenge those determinations in this appeal.

[6] NIFLA alleged that it had associational standing to seek declaratory and injunctive relief on behalf of its New York members not explicitly named in the complaint. The district court disagreed, noting that this Court's precedent foreclosed such assertions regarding associational standing, and thus denied the motion as to NIFLA's unnamed members for lack of standing. Although NIFLA initially cross-appealed this ruling, it has since withdrawn its challenge.

I. *Younger* Abstention

"We evaluate a district court's determination not to abstain under *Younger* . . . *de novo*, because it implicates the court's subject matter jurisdiction." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004).

"The *Younger* abstention doctrine embodies **[*16]** the 'longstanding public policy against federal court interference with state court proceedings.'" Gristina v. Merchan, 131 F.4th 82, 86 (2d Cir. 2025) (quoting Younger, 401 U.S. at 43). Although a "federal court's obligation to hear and decide a case is virtually unflagging," Sprint Communs., Inc. v. Jacobs, 571 U.S. 69, 77, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013) (internal quotation marks and citation omitted), there are a small number of cases "in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do,'" New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (quoting Younger, 401 U.S. at 45). Abstention is warranted in those cases because they present certain "exceptional" circumstances, namely, "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding uniquely in furtherance of the state courts' ability to perform their judicial functions." Gristina, 131 F.4th at 86-87 (internal quotation marks and citations omitted). Moreover, although the *Younger* doctrine usually applies when the parties to the federal action are also "actually involved in a [state] proceeding," Citizens for a Better Env't, Inc. v. Nassau Cnty., 488 F.2d 1353, 1360 (2d Cir. 1973), in some circumstances, the doctrine may apply "to the claims of third-parties who are not directly involved in any pending state proceeding," Spargo v. N.Y. State Comm'n on Jud. Conduct, 351 F.3d 65, 82 (2d Cir. 2003); see Hicks v. Miranda, 422 U.S. 332, 348-49, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975). In such instances, abstention may be warranted **[*17]** when the interests of the plaintiffs in the federal and state actions "are so inextricably intertwined that direct interference with the state court proceeding is inevitable." Spargo, 351 F.3d at 82 (internal quotation marks and citation omitted). Further, in determining whether to apply *Younger* to third-party claims, we may also consider certain non-dispositive factors, including whether the state proceeding "implicates an important state interest" and whether "the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Falco v. Justs. of the Matrim. Parts of Sup. Ct., 805 F.3d 425, 427 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite the fact that *Younger* may apply in these circumstances, the Supreme Court has emphasized that "abstention from the exercise of federal jurisdiction is the exception, not the rule." Sprint, 571 U.S. at 593 (internal quotation marks and citation omitted).

The Attorney General argues that abstention under *Younger* is warranted because the HBI Enforcement Action qualifies as a pending civil enforcement action that implicates important state interests and affords the NIFLA plaintiffs with an adequate opportunity for judicial review of their First Amendment claims, given the NIFLA plaintiffs' interests **[*18]** are sufficiently intertwined with the interests of the HBI defendants. Moreover, the Attorney General cautions that, as a result of the intertwined nature of the interests, the federal case will inevitably interfere with the HBI Enforcement Action. We are unpersuaded.

In situations analogous to the circumstances presented by this case, the Supreme Court has declined to apply the *Younger* doctrine. For example, in *Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974), Steffel and a companion were distributing handbills at a Georgia shopping center. *Id.* at 455. A shopping center employee called the police, and upon their arrival, officers told the handbillers that failure to stop their activity would result in arrest. *Id.* Steffel left the shopping center to avoid any consequences, but "[h]is companion stayed, . . . continued handbilling, and was arrested and subsequently arraigned . . . [for] criminal trespass." *Id.* at 455-56. Steffel later filed a federal complaint, alleging that the police's conduct stifled his First Amendment right to handbilling and that he would have returned to the shopping center to resume this activity but for his concern that he would be arrested too. *Id.* at 456. The Supreme Court held that *Younger* did not apply to Steffel's federal action, despite the presence **[*19]** of the parallel state court criminal proceedings against his companion for the same conduct. *Id.* at 475. In doing so, the Supreme Court observed that abstention in circumstances like these would place a plaintiff between the options of "intentionally flouting state law" and "forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Id.* at 462.

Similarly, in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975), three adult entertainment bars that allowed certain staff members to work topless ceased this conduct after a local ordinance made it illegal. *Id.* at 924. One bar, however, eventually resumed the conduct and received a criminal summons for violating the ordinance. *Id.* at 925. All three bars, including the one that had received the summons, sued in federal court, alleging that the ordinance violated their First Amendment rights. *Id.* at 924-25. The Supreme Court concluded that claims brought by the bar that had received the summons were "squarely governed by *Younger*" because it was a party in a state criminal proceeding regarding the conduct at issue in the federal case. *Id.* at 929. As for the other two bars, however, the Supreme Court declined to apply *Younger* because these businesses were not subject to an ongoing, parallel state criminal **[*20]** case and because any relief granted in the federal case would not interfere with the state's criminal proceeding. *Id.* at 930-31.

Based on this guidance, we conclude that *Younger* does not apply to this case, and that the district court was correct to exercise federal jurisdiction over the NIFLA plaintiffs' claims. The NIFLA plaintiffs allege that the State initiated an enforcement action against the HBI defendants for making certain statements about APR and providing access to APR resources, including links to the APR hotline and abortionpillreversal.com. The NIFLA plaintiffs further allege that, in light of this enforcement action, they ceased making statements, and refrained from making additional statements, the same as, or similar to, and providing access to the same resources as, those at issue in the HBI Enforcement Action, and brought their own federal case to vindicate their independent First Amendment rights. We see no daylight between the factual circumstance before us, and the situations in *Steffel* and *Doran*, where plaintiffs ceased conduct because of the existence of a parallel state court proceeding to which they were not a party and brought a federal action to vindicate their own constitutional rights for related **[*21]** conduct.[7]

---

[7] Of course, the plaintiffs in both *Steffel* and *Doran* ceased conduct because of parallel state *criminal* proceedings, whereas the NIFLA plaintiffs here allege that they ceased conduct because of parallel state *civil enforcement* proceedings. Nevertheless, we see no basis to distinguish *Steffel* and *Doran* on that ground, and the Attorney General makes no argument that we should.

The Attorney General attempts to distinguish Steffel and Doran on the ground that, in those cases, plaintiffs "were engaging in conduct that indisputably had become or was already prohibited," whereas here, the NIFLA plaintiffs "have not been engaging in the advertising that is at issue in the [HBI Enforcement Action], and they have never been threatened with such an action by the Attorney General." Appellant's Reply Br. at 4-5. This argument misses the mark because the complaint specifically alleges that the NIFLA plaintiffs were engaging in the conduct at issue in the HBI Enforcement Action and ceased doing so because of the threat of future enforcement by the Attorney General. For example, the NIFLA plaintiffs allege that NIFLA "removed . . . statements" about APR from its website "for fear of retaliation and punishment by the Attorney General." Joint App'x at 39, ¶ 187. Similarly, Gianna's House allegedly removed from its website APR-related statements and access to the APRN shortly after the State initiated the HBI Enforcement Action. Joint App'x at 42, ¶ 209. Thus, the record belies any contention that, unlike the plaintiffs in Steffel and Doran, the NIFLA plaintiffs **[*22]** here were not previously engaged in the relevant conduct.

The Attorney General's other arguments are similarly unavailing. Relying on our decision in Spargo, the Attorney General contends that *Younger* should have applied because the NIFLA plaintiffs' claims are intertwined with the claims in the HBI Enforcement Action, as the NIFLA plaintiffs' claims "derive from the HBI defendants' rights at issue in the state-court action." Appellant's Br. at 26. The Attorney General further contends that addressing the NIFLA plaintiffs' claims would "necessarily require the district court in this case to decide whether the Attorney General acted unlawfully with respect to the HBI defendants in the state-court action." Appellant's Br. at 27. Such reliance on Spargo, however, is misplaced.

In Spargo, a state court judge was charged by a state judicial commission with judicial misconduct for allegedly violating ethical rules in connection with his campaign activities, and, as a result of these allegations, the state commission initiated disciplinary proceedings. *See* Spargo, 351 F.3d at 68-69. Two of the judge's political supporters, who were not involved in the state proceedings, brought a federal action that sought relief declaring that the **[*23]** ethics rules the judge was alleged to have violated were unconstitutional because they infringed upon the supporters' First Amendment rights to support, and associate with, the judge and other judicial candidates. Id. at 70. The supporters also sought a permanent injunction barring the state commission from pursuing disciplinary charges against the judge. *Id.* We concluded that abstention in the federal case was warranted under *Younger* because the supporters "d[id] not assert independent First Amendment rights, nor d[id] they bring truly separate challenges to the judicial conduct rules." Id. at 83. We reasoned that the supporters did not bring independent claims because the ethics rules did not apply to them, and, as a result, their First Amendment rights were "entirely derivative of whatever rights [the judge] may have to engage in the prohibited speech and political activity." Id. at 83-84 (internal quotation marks and citation omitted). In other words, the plaintiffs had a right to engage in the conduct "only if [the judge] ha[d] an underlying First Amendment right to engage in [the conduct]." Id. at 84. We therefore determined that the supporters' federal claims were "unavoidably intertwined [with] and inseparable" from the charges in the state proceeding. *Id.*

Here, the NIFLA **[*24]** plaintiffs' First Amendment claim is not "entirely derivative" of—that is, wholly dependent on—the rights of the HBI defendants. Indeed, the NIFLA plaintiffs allege that

they have made, and wish to continue to make, informational statements regarding APR, including providing access to resources maintained by the APRN, such as abortionpillreversal.com and the APR hotline, while not providing APR themselves. By contrast, HBI maintains and controls the APRN and related resources, and other defendants in the HBI Enforcement Action provide APR. Given these factual differences, "the legal analysis" of the NIFLA plaintiffs' claim is not "unavoidably intertwined [with] and inseparable" from any analysis of the claims in the HBI Enforcement Action. *Id.*

In any event, the mere fact that the NIFLA plaintiffs and the HBI defendants may both have an interest in a determination that the State's regulatory conduct at issue in the HBI Enforcement Action violates the First Amendment does not alter our conclusion that Younger abstention does not apply here. In Spargo, we recognized that "[a]lthough plaintiffs may seek the same relief, parallel challenges to the constitutionality of a state statute or policy are typically not barred by **[\*25]** Younger." Id. at 83; *see also* Green v. City of Tucson, 255 F.3d 1086, 1099 (9th Cir. 2001) ("*Younger* abstention . . . is not intended to cut a broad swath through the fabric of federal jurisdiction, relegating parties to state court whenever state court litigation could resolve a federal question."). Our sister circuits have taken a similar position, noting that alignment of interests is not sufficient for *Younger* to apply to third-party claims. *See, e.g.*, D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1231 (10th Cir. 2004) (explaining that *Younger* does not apply "[s]o long as the stranger has its own distinct claim to pursue," even if that claim is "aligned with the state-court litigant in a common enterprise of vindicating the policy that gives rise to their individual claims"); Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 882 (8th Cir. 2002) (declining to apply *Younger* where the interests among the relevant parties were "generally aligned"). Accordingly, because the NIFLA plaintiffs have an independent First Amendment right that does not depend on the rights of the HBI defendants, the federal case is not inextricably intertwined with the HBI Enforcement Action.

The Attorney General also argues that, without abstention, the federal case will "interfere with the HBI action" because a favorable outcome for the NIFLA plaintiffs "could preclude the Attorney General from proceeding in the state-court **[\*26]** action, depending on the injunction's terms" and, in any event, "the HBI defendants could attempt to use any judgment against the Attorney General in this action as a ground to dismiss or otherwise obtain an advantage in the state-court action." Appellant's Br. at 28. We disagree. As the Supreme Court has explained, although adjudication of federal claims "may well affect, or for practical purposes pre-empt, a future—or . . . even a pending—state-court action," "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." New Orleans Pub. Serv., Inc., 491 U.S. at 373; *see also* Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 47 (1st Cir. 2012) (observing that the Supreme Court determined that the federal lawsuits in Steffel and Doran would not interfere with related state court proceedings despite the fact that "the outcomes of the federal suits would create judicial precedent which might or might not coincide with the determinations made by the state courts as to other parties under the same state statutes"). Moreover, "[i]nterference is . . . usually expressed as a proceeding that either enjoins the state proceeding or has the practical effect of doing so." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005) (internal quotation marks omitted); *see* Spargo, 351 F.3d at 85 (finding plaintiffs in the federal action **[\*27]** sought to "directly interfere with the pending [state] disciplinary proceeding . . . by requesting that the District Court permanently

enjoin defendants from pursuing the disciplinary proceeding or otherwise enforcing the challenged judicial conduct rules"). Here, the NIFLA plaintiffs do not request relief that would enjoin, or would have the practical effects of enjoining, the HBI Enforcement Action; instead, they seek to vindicate their own, independent First Amendment rights. Moreover, the Attorney General has acknowledged that a decision in the federal court would likely not have formal preclusion effect in the HBI Enforcement Action. Thus, the federal case will not interfere with the state court proceedings in a manner that warrants *Younger* abstention.[8]

In sum, we conclude that the district court correctly declined to abstain from adjudicating the NIFLA plaintiffs' claims under the *Younger* doctrine.

## II. Preliminary Injunction

With respect to the merits, the Attorney General argues that the district court erred by granting the preliminary injunction on the grounds that the NIFLA plaintiffs' speech was protected noncommercial speech and that, because they were likely to **[*28]** make out a constitutional injury, the other preliminary injunction requirements had been satisfied. We are unpersuaded. As set forth below, we conclude that the district court correctly determined that, based on the current record, the NIFLA plaintiffs are likely to succeed on their First Amendment claim because their APR-related statements are noncommercial speech, and the Attorney General has failed to show that the regulatory conduct restricting that speech can withstand strict scrutiny. Furthermore, as for the remaining preliminary injunction requirements, we discern no error in the district court's conclusion that, because the NIFLA plaintiffs are likely to succeed on their constitutional claim, the NIFLA plaintiffs have established irreparable injury and that an injunction is in the public interest.

"We review *de novo* the District Court's legal conclusions in deciding to grant a motion for a preliminary injunction, but review its ultimate decision to issue the injunction for abuse of discretion." Yang v. Kosinski, 960 F.3d 119, 127 (2d Cir. 2020) (internal quotation marks and citations omitted). A district court abuses its discretion when "(1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision—though **[*29]** not necessarily the product of legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 79 (2d Cir. 2024) (alteration adopted) (internal quotation marks and citation omitted). Generally, "[a] plaintiff seeking a preliminary injunction must establish [(1)] that he is

---

[8] The Attorney General also asserts that the HBI defendants can sufficiently protect the NIFLA plaintiffs' interest in the state proceeding because "if the HBI defendants persuade the state court that their advertisement of APR is constitutionally protected speech . . . then there will be no threatened civil enforcement action for the NIFLA plaintiffs to fear by engaging in the same advertising of APR." Appellant's Br. at 29. We are unpersuaded. Even assuming *arguendo* that this is true, because, as we explained above, we conclude that the NIFLA plaintiffs' claims are not intertwined with those at issue in the HBI Enforcement Action and the NIFLA plaintiffs' federal case does not interfere with state proceedings, whether the NIFLA plaintiffs' interests are protected in the state proceedings alone does not justify abstention. *See* Falco, 805 F.3d at 427 (explaining that this factor was "not dispositive" and it was "unclear how much weight [to] afford [it]"); *see also* Spargo, 351 F.3d at 85 (suggesting that whether a federal case is intertwined, or would interfere, with a state proceeding are "prerequisite[s] for extending *Younger*" to third-party claims); Coakley, 671 F.3d at 40 ("The question of whether interference exists is a threshold issue." (internal quotation marks and citation omitted)).

likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of the equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).[9] However, when the government is the defendant and opposes the preliminary injunction, like it has done so here, the final two requirements merge together. *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).

## A. Likelihood of Success on the Merits

The First Amendment, which applies to the states through the due process clause of the Fourteenth Amendment, states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *see Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) (incorporating the First Amendment against the states). This means that, "[a]s a general matter, [the] government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v. Ent. Merchs. Ass'n,* 564 U.S. 786, 790-91, 131 S. Ct. 2729, 180 L. Ed. 2d 708 (2011) (alteration adopted) (internal quotation marks and citation omitted). "However, this principle, [*30] like other First Amendment principles, is not absolute." *Ashcroft v. ACLU,* 535 U.S. 564, 573, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002). Indeed, although laws and regulations that restrict speech on the basis of content are presumptively unconstitutional, such laws and regulations may be permissible, but only if they satisfy strict scrutiny. *See Reed v. Town of Gilbert,* 576 U.S. 155, 163, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). By contrast, "[r]egulations involving [other] categories of speech are subject to a less-exacting standard of judicial scrutiny." *Volokh v. James,* 148 F.4th 71, 85 (2d Cir. 2025). One of those categories is commercial speech, which, as the Supreme Court has explained, "enjoys a limited measure of protection . . . and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Bd. of Trs. v. Fox,* 492 U.S. 469, 477, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (alteration adopted) (internal quotation marks and citation omitted); *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 561-66, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). Indeed, "[t]he States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, or that proposes an illegal transaction." *Zauderer v. Off. of the Disciplinary Counsel,* 471 U.S. 626, 638, 105 S. Ct. 2265, 85 L. Ed. 2d 652, 17 Ohio B. 315 (1985) (internal citations omitted). However, "commercial speech that is not false or deceptive and does not concern unlawful activities" may be regulated only if it survives intermediate

---

[9] The parties dispute whether the NIFLA plaintiffs instead must demonstrate a "clear or substantial likelihood of success on the merits." *See Walden v. Kosinski,* 153 F.4th 118, 134 (2d Cir. 2025) (internal quotation marks and citation omitted). That heightened standard applies when a plaintiff seeks "to modify the status quo by virtue of a '*mandatory* preliminary injunction' (as opposed to seeking a '*prohibitory* preliminary injunction' to maintain the status quo)." *A.H. ex rel. Hester v. French,* 985 F.3d 165, 176 (2d Cir. 2021) (emphasis in original) (quoting *Yang,* 960 F.3d at 127). But here, the NIFLA plaintiffs seek a prohibitory injunction, not a mandatory one: the Attorney General has not yet brought a civil enforcement action against the NIFLA plaintiffs, and the NIFLA plaintiffs seek a preliminary injunction ensuring that state of affairs will continue. So the heightened likelihood-of-success standard does not apply.

scrutiny. *Id.* Thus, whether the NIFLA plaintiffs' speech is commercial speech or noncommercial speech is central to this **[*31]** appeal.[10]

"The core notion of commercial speech is that which does no more than propose a commercial transaction." *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 274 (2d Cir. 2010) (internal quotation marks and citation omitted). "Outside this so-called 'core' lie various forms of speech that combine commercial and noncommercial elements." *Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 134 F.3d 87, 97 (2d Cir. 1998). Whether these types of mixed communications are considered commercial speech is based upon a number of factors, including whether the speech is an advertisement, whether the speech references a specific product, and whether the speaker has an economic motive. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983); *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002) ("Even a communication combining commercial and noncommercial elements, if it is an advertisement, makes reference to a specific product, and the speaker has an economic motivation for the communication, is properly characterized as commercial speech."). "[W]hile none of these factors alone would render the speech in question commercial, the presence of all three factors provides strong support for such a determination." *Bad Frog Brewery, Inc.*, 134 F.3d at 97 (internal quotation marks and citation omitted). On the other hand, the absence of any one factor does not mean that the speech is noncommercial. *Bolger*, 463 U.S. at 67 n.14 ("Nor do we mean to suggest that each of [these factors] must necessarily be present **[*32]** in order for speech to be commercial."). Ultimately, "a court's lodestars in distinguishing commercial from noncommercial speech must be the nature of the speech taken as a whole[.]" *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 94 (2d Cir. 2010) (internal quotation marks and citation omitted). "In other words, context matters," *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council*, 721 F.3d 264, 286 (4th Cir. 2013) (en banc), and, as a result, our inquiry is fact intensive, *see City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419, 113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993); *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) ("[The] commercial speech analysis is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." (internal quotation marks and citation omitted)).

We conclude that the district court did not abuse its discretion, based on the record at this stage of the litigation, in finding that the NIFLA plaintiffs were likely to succeed on their First Amendment claims because their speech at issue is noncommercial speech, and the Attorney General has not demonstrated that regulation of that speech would survive strict scrutiny.

The NIFLA plaintiffs assert that they have made, and wish to continue to make, informational statements on their websites and in other sources about APR and provide links and instructions for accessing the APRN, maintained separately and exclusively by third-party HBI, so that women **[*33]** can receive more information about APR, receive counseling, and, if they so choose, be matched with a third-party provider who can administer APR. *See, e.g.*, Joint App'x at 38, ¶ 180(b) ("There is an effective process called abortion pill reversal that can *reverse the effects* of the abortion pill and allow you to continue your pregnancy, but *time is of the essence*."

---

[10] As explained further below, the Attorney General did not argue in the district court, nor does she argue on appeal, that the State's regulatory conduct could survive strict scrutiny if the speech at issue is determined to be noncommercial.

(emphasis in original)); Joint App'x at 41-42, ¶ 208 ("[I]f you have recently taken the abortion pill and are having regret, it may be possible to undo the effects of abortion drugs. Learn more here."); Joint App'x at 45, ¶ 223 ("If you have recently taken the first dose (mifepristone) and decided not to take the second, please contact [the APRN]."); Joint App'x at 45, ¶ 225 ("Progesterone . . . has been used to support pregnancies with a risk of miscarriage for decades[.] . . . [I]f you've taken the first [dose of mifepristone] and had doubts or changed your mind, you still have a chance to save your pregnancy!"); Joint App'x at 39, ¶ 189; 42, ¶ 213; 44, ¶ 221 (alleging plaintiffs provided information to access abortionpillreversal.com, the APR hotline, and the APRN). It is undisputed that the NIFLA plaintiffs have made, **[*34]** and wish to continue to make, these statements based on their moral and religious beliefs, not based on any economic motivation. Moreover, the uncontroverted record demonstrates that the NIFLA plaintiffs do not charge for access to this information or any of the pregnancy-related or parenting services they administer. They also assert that they do not provide APR themselves, and there is no evidence in the record to the contrary. Furthermore, although they make referrals to third-party providers, which then provide APR, it is uncontroverted that they receive no commission, fee, or other form of direct or indirect remuneration for making these referrals. Thus, any decision to proceed with that protocol is made between the individual and a separate third-party provider the individual is referred to, including through the APRN. Accordingly, "[t]aken as a whole," based on the record before the Court at the preliminary injunction stage of litigation, "the nature of [the NIFLA plaintiffs'] speech" is informational, without any economic motivation, and thus, we agree with the district court that such speech is noncommercial. *Conn. Bar Ass'n*, 620 F.3d at 94; *see also NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1109, 1119-20 (9th Cir. 2024) (concluding that requiring online businesses to prepare **[*35]** reports about "any risk . . . to children that arise from the data management practices of the business" is noncommercial speech because, *inter alia*, the reports are related to an issue of public concern and there is no clear economic motivation to provide them).

Our conclusion here is consistent with the Fourth Circuit's decision in *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 879 F.3d 101 (4th Cir. 2018). There, the mayor of Baltimore and the city council enacted an ordinance requiring pregnancy centers to post disclaimers in their waiting rooms if they did not provide or make referrals for abortion and birth control services to notify clients that they did not provide those services. *Id.* at 106. The plaintiff, a non-profit Christan organization and affiliate of HBI that opposes abortion and provides free services related to pregnancy and parenting, was required by the ordinance to put a disclaimer in its waiting room because it did not provide or make referrals for abortion and birth control services. *Id.* Plaintiff moved to enjoin enforcement of the ordinance for violating, among other things, its First Amendment speech rights. *Id.* As relevant to this appeal, the Fourth Circuit determined that the plaintiff's speech concerning its services constituted noncommercial speech because: **[*36]** (1) "[n]othing in the record suggest[ed] that the [plaintiff] propose[d] any transactions in the waiting room where the disclaimer would appear"; (2) "[e]ven if pregnancy-related services [were] discussed there, the [plaintiff] collect[ed] no remuneration of any kind, including referral fees from physicians"; and (3) "[a] morally and religiously motivated offering of free services cannot be described as a bare 'commercial transaction.'" *Id.* at 108.

Here, as in Greater Baltimore Center for Pregnancy Concerns, we conclude that the speech at issue is noncommercial based on the uncontroverted evidence in the current record demonstrating that the speech is religiously and morally motivated, the NIFLA plaintiffs receive no remuneration or financial benefit for engaging in it, and the NIFLA plaintiffs do not provide APR themselves, but rather provide the public with information about APR and access to third-party providers who can offer APR. Put simply, in this context, these combined elements of the speech at issue here do not transform it into commercial speech for First Amendment purposes.

To hold otherwise could potentially subject a sweeping range of non-profits to regulation of their speech for providing the public with information and resources [*37] concerning critical services. This could include, depending, of course, on the particular facts and context of each situation, a reproductive rights group in a state with abortion restrictions that provides information about out-of-state organizations that will help women obtain the procedure for free; an LGBT rights group in a state with gender-affirming care restrictions that provides free information about out-of-state organizations that will help individuals seeking hormone therapy to obtain it; or a group that matches immigrants with organizations providing access to employment, English language classes, or immigration legal services. Cf. In re Primus, 436 U.S. 412, 422, 439, 98 S. Ct. 1893, 56 L. Ed. 2d 417 (1978) (concluding that a letter from a lawyer associated with the ACLU to a potential client "communicating an offer of free assistance by attorneys associated with the ACLU, not an offer predicated on entitlement to a share of any monetary recovery . . . [,] undertaken to express personal political beliefs and to advance the civil-liberties objectives of the ACLU, rather than to derive financial gain," was protected speech subject to strict scrutiny under the First Amendment). Expanding commercial speech in a way that covers public statements made by these types [*38] of organizations would push the commercial speech doctrine far beyond its "core" of regulating commercial transactions, IMS Health Inc., 630 F.3d at 274, and risks stymying a central tenant of the First Amendment, see Safelite Grp., Inc. v. Jepsen, 764 F.3d 258, 263 (2d Cir. 2014) (observing that a "core First Amendment value[]" is the promotion of "efficient exchange of information" (internal quotation marks and citation omitted)); see also Thomas v. Collins, 323 U.S. 516, 537, 65 S. Ct. 315, 89 L. Ed. 430 (1945) ("Free trade in ideas means free trade in the opportunity to persuade to action, not merely to describe facts." (internal quotation marks omitted)).

The Attorney General's arguments to the contrary are unpersuasive. The Attorney General first asserts that the speech should be considered commercial because "*someone* must bear the cost" of APR "be it insurance, the medical provider, or a charity," and that, as the complaint alleges, the NIFLA plaintiffs offer services in the "stream of commerce" that have commercial value. Appellant's Br. at 34. However, this would be true of any non-profit providing information, free services, and access to third-party providers; those services will inevitably have some commercial value and eventually someone will have to be paid for them. Thus, the fact that there will be some payment for services steps removed from the original provision [*39] of the information or service "does not suffice to transform [the NIFLA plaintiffs'] ideological and religious advocacy into commercial activity." Greater Balt., 879 F.3d at 108.

The Attorney General also contends that, despite the fact that the NIFLA plaintiffs do not offer APR services and receive no remuneration for APR referrals or other services they provide, the NIFLA plaintiffs' statements are nevertheless commercial speech because "consumers will likely

be led to believe that the NIFLA plaintiffs will arrange for them to receive [the APR protocol] because their intended statements invite consumers to access a network of physicians who are willing and able" to provide it. Appellant's Br. at 35. In support of this position, the Attorney General argues that the NIFLA plaintiffs' statements are analogous to advertisements for other medical services, which have long been considered commercial speech. Appellant's Br. at 35-36 (citing *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 366, 122 S. Ct. 1497, 152 L. Ed. 2d 563 (2002); *Kiser v. Kamdar*, 831 F.3d 784, 787-89 (6th Cir. 2016); and *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004)). We disagree. In the cases cited by the Attorney General, pharmacists published promotional materials to increase sales of their own products, *Thompson*, 535 U.S. at 365, and medical professionals advertised that they themselves offered specialty procedures, *Kiser*, 831 F.3d at 787-89, or had obtained certain credentials [*40] to grow their own patient bases, *Joseph*, 353 F.3d at 1103, 1106. In other words, plaintiffs in those cases were advertising products or services they offered in order to gain some financial benefit. But here, the NIFLA plaintiffs allege that they receive no direct or indirect payment for the services they provide or referrals they make. Moreover, there is no evidence in the record, at this stage of litigation, to suggest that the NIFLA plaintiffs gain other types of economic benefits by engaging in this speech, such as an increased customer base or a capital increase through fundraising. *Cf. First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017) (determining that advertisements related to the provision of free medical services was commercial speech because the advertisements "directly relate[d] to [plaintiff's] ability to fundraise and, in turn, to buy more advertisements," and were used to "maintain a patient base, which in turn can generate income"). In addition, to the extent the Attorney General argues that the NIFLA plaintiffs' speech is commercial because they serve as the "conduit" through which individuals can receive the APR protocol, that would, as we cautioned above, expand the commercial speech doctrine to virtually every type of non-profit entity.

Finally, [*41] the Attorney General argues that the district court erred by considering the NIFLA plaintiffs' motivation for engaging in the speech—that is, religious and moral, rather than economic—as "dispositive to the commercial-speech inquiry," and that, in doing so, the court "overlooked that, regardless of motive," the NIFLA plaintiffs' speech "will propose a commercial transaction." Appellant's Br. at 37-38. To be sure, no factor, including the speaker's motivation, is dispositive to the noncommercial speech inquiry. See *Bolger*, 463 U.S. at 67 n.14; *Bad Frog Brewery, Inc.*, 134 F.3d at 97. *But see United States v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012) (describing commercial speech as "expression solely related to the economic interests of the speaker and its audience"). However, here, in concluding that the NIFLA plaintiffs' speech was noncommercial, the district court considered more than just the NIFLA plaintiffs' motivation. Indeed, the district court emphasized that, based on the record, the NIFLA plaintiffs do not provide APR themselves, and instead refer individuals to third-party providers who do; the NIFLA plaintiffs offer their services for free; and the NIFLA plaintiffs do not receive any direct or indirect remuneration for the referrals. Based on the totality of these facts, the district court correctly [*42] concluded that the NIFLA plaintiffs' speech was noncommercial.[11]

---

[11] To support her position, the Attorney General relies on a recent decision in *National Institute of Family & Life Advocates v. Bonta*, 769 F. Supp. 3d 1109 (C.D. Cal. 2025), where the district court denied NIFLA's request for a preliminary injunction on the ground, among others, that NIFLA's speech is commercial. *Id.* at 1120-21. Importantly, we note that, in *Bonta*, the district court found that a "powerful economic motivation" was demonstrated because the plaintiffs in that case, including NIFLA, "d[id] not

Because we hold that the NIFLA plaintiffs' speech is likely noncommercial, the Attorney General can regulate it only if she satisfies the requirements of strict scrutiny. *See* Reed, 576 U.S. at 163-64. The Attorney General bears the burden to show that a challenged regulation satisfies strict scrutiny by demonstrating that it is narrowly tailored to serve a compelling state interest. *See Brokamp v. James*, 66 F.4th 374, 391 (2d Cir. 2023). To pass this test, "[t]he state must specifically identify an actual problem in need of solving, and the curtailment of free speech must be actually necessary to the solution." Brown, 564 U.S. at 799 (internal quotation marks and citations omitted). This is a "stringent standard." Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 585 U.S. 755, 766, 138 S. Ct. 2361, 201 L. Ed. 2d 835 (2018). Here, the Attorney General has not raised any arguments regarding strict scrutiny either before the district court or on appeal, and thus she has not satisfied her burden. *Cf.* Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs . . . normally will not be addressed on appeal.").[12]

Accordingly, we conclude that the district court correctly determined that the first preliminary injunction requirement was met because the NIFLA plaintiffs demonstrated that they will likely **[*43]** be able to succeed on their First Amendment claim by establishing that their speech is noncommercial.

## B. Remaining Preliminary Injunction Requirements

We also discern no error in the district court's determination that the remaining preliminary injunction requirements were satisfied. As an initial matter, we note that the Attorney General principally contends that these other requirements were not met because of the absence of a likelihood of success as to the constitutional violation. *See, e.g.*, Appellant's Br. at 49 ("[T]he NIFLA plaintiffs failed to establish a likelihood of success on their free-speech claim. They therefore cannot rely on their alleged constitutional violation to establish a risk of irreparable harm."); *id.* at 51 ("As with its irreparable-harm determination, the district court based its public-policy determination on its mistakenly favorable assessment of the merits of the NIFLA plaintiffs'

---

dispute that they engage[d] in grant fundraising based, in part, on their APR advocacy and technical support," and that economic motivation "militate[d] strongly in favor of a finding that [the] proffered speech is commercial." *Id.* at 1121. Here, by contrast, there is no evidence regarding the NIFLA plaintiffs' fundraising activity. Indeed, the Attorney General has conceded for purposes of this motion that the NIFLA plaintiffs' speech is not economically motivated, and there does not appear to be any evidence in the record to suggest that the NIFLA plaintiffs receive any financial benefit for engaging in the speech. *Compare id.*, *with* Culture of Life Fam. Servs. Inc. v. Bonta, No. 24-cv-1338, 2025 U.S. Dist. LEXIS 114449, 2025 WL 1687929, at *6 (S.D. Cal. June 13, 2025) (denying request for a preliminary injunction after concluding that similar APR-related speech was commercial because the record indicated "a strong[] case . . . for economic motivation" and noting that plaintiff provided APR).

[12] The Attorney General also argues that she may regulate the NIFLA plaintiffs' APR-related statements as commercial speech because those statements misrepresent the safety and efficacy of APR and are thus false and misleading. To be sure, as we noted above, the State can regulate false and misleading speech if it constitutes *commercial speech*. Zauderer, 471 U.S. at 638. However, because we conclude that the NIFLA plaintiffs' statements are, on this record and at this stage in the litigation, noncommercial speech, we need not reach this argument. *See* United States v. Alvarez, 567 U.S. 709, 718, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012) (plurality) (explaining that for noncommercial speech, the First Amendment generally prevents content-based regulation of false statements). Moreover, the Attorney General has not asserted that she can regulate the NIFLA plaintiffs' speech under another category of speech, such as fraudulent speech, that has traditionally not received First Amendment protection. *See* United States v. Stevens, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (explaining that "the First Amendment has permitted restrictions on a few historic categories of speech—including . . . fraud").

free-speech claim."). Moreover, as set forth below, based upon the likelihood of success with respect to the free speech claim, the district court correctly held that the other requirements were met for the issuance of the preliminary injunction.

Beginning with irreparable harm, a litigant must show that **[*44]** they "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Reyes v. City of New York, 141 F.4th 55, 67 (2d Cir. 2025) (internal quotation marks and citation omitted). The Supreme Court has explained that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); see Green Party of N.Y. State v. N.Y. State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004) ("[W]here a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied."). Because, as set forth above, the NIFLA plaintiffs have shown a likelihood of success on their First Amendment claim, they have also established an irreparable injury. See A.H. ex rel. Hester v. French, 985 F.3d 165, 184 (2d Cir. 2021) (concluding that the appellants suffered an irreparable injury because the court determined that they were likely to succeed on their First Amendment claim).

Moreover, we conclude that a preliminary injunction is in the public interest. We have previously explained that "securing First Amendment rights is in the public interest," N.Y. Progress & Prot. PAC v. Walsh, 733 F.3d 483, 488 (2d Cir. 2013), and further that "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal," Agudath Isr. of Am. v. Cuomo, 983 F.3d 620, 637 (2d Cir. 2020). Here, the preliminary injunction serves to secure **[*45]** the First Amendment rights of the NIFLA plaintiffs by allowing them to make religiously and morally motivated statements that provide information about APR to women who may wish to attempt to counteract the effects of an abortion initiated by oral medication. Furthermore, the Attorney General does not argue that there are no constitutional alternatives to achieve her goals of regulating APR-related statements. Accordingly, the NIFLA plaintiffs have satisfied this final requirement.

* * *

In sum, we hold that, based on the current record, the district court did not abuse its discretion in imposing the preliminary injunction, as the NIFLA plaintiffs are likely to succeed on their First Amendment claim because the speech at issue is noncommercial speech and the other requirements for the issuance of a preliminary injunction were met.[13]

## CONCLUSION

---

[13] We note that we are reviewing the NIFLA plaintiffs' challenge to the Attorney General's conduct at an early stage of litigation, and, as we have explained, "[a] preliminary injunction is not a full merits decision, but rather addresses only the likelihood of success on the merits." Antonyuk v. James, 120 F.4th 941, 1048 n.126 (2d Cir. 2024) (emphasis omitted) (internal quotation marks and citation omitted). Thus, "[o]ur affirmance . . . of the district court's injunction does not determine the ultimate constitutionality of the [State's actions], which await further briefing [and] discovery[.]" Id.

For the foregoing reasons, we **AFFIRM** the order of the district court.

---

**End of Document**