## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Children of the Court and Judiciocracy, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 25-cv-03387 |
| v. | ) ) | Judge April M. Perry |
| Illinois Attorney Registration and Disciplinary Commission, Lea S. Guitierrez, and Tammy Evans, | ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Plaintiffs Children of the Court and Judiciocracy LLC brought this action against the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), ARDC Administrator Lea S. Guitierrez, and ARDC Senior Legal Counsel Tammy Evans after the ARDC announced that it would be bringing disciplinary charges against Illinois attorney Edward Weinhaus. Doc. 1. Before this Court is Defendants' motion to dismiss based upon abstention principles, lack of subject matter jurisdiction, and failure to state a claim. Doc. 28. For the reasons that follow, the Court grants the motion to dismiss.

## BACKGROUND[1]

Plaintiff Children of the Court is a Missouri non-profit corporation that works with adult children of divorce and advocates for the assignment of parental rights cases to judges who have

---

[1] The following facts are drawn from the allegations in Plaintiffs' complaint, which for the purposes of this motion the Court accepts as true, drawing all reasonable inferences in Plaintiffs' favor. *See Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also considers public records which are referenced in the complaint or of which the parties have requested the Court take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that when deciding a motion to dismiss, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

been parents or foster parents. Doc. 1 at 1, 3–4. Children of the Court was founded in 2023 by students in a social entrepreneurship class at UCLA and their professor, Illinois lawyer Edward Weinhaus ("Weinhaus"). *Id.* at 3. The funding for Children of the Court comes from an unrelated case Weinhaus and a third party settled before Cook County Circuit Court Judge Thaddeus L. Wilson. *Id.* at 4. Pursuant to that settlement, Weinhaus cannot be paid for his involvement with Children of the Court, and he therefore now serves as its volunteer Executive Director. *Id.* at 4, 9. Children of the Court is controlled by a four-member board. *Id.*

Plaintiff Judiciocracy LLC ("Judiciocracy") is a Missouri limited liability company responsible for numerous law-related publications, including *AbusiveDiscretion* and *ALABnews*. *Id.* at 4–5. Weinhaus formed Judiciocracy in 2023 and remains its CEO. *Id.* at 5.

In February 2025, the ARDC announced that it had started the process of bringing professional disciplinary charges against Weinhaus, which Plaintiffs contend was "for the purpose of stifling the speech and activities of the Plaintiffs." Doc. 1 at 9. According to the complaint, Weinhaus immediately stopped his reporting work for Judiciocracy upon learning of the possibility of ARDC charges. Weinhaus also allegedly "required [Children of the Court to] freeze its letter campaigns." *Id.* Plaintiffs complain that as a result of the ARDC's statements, Weinhaus is "unable to perform his duties for either entity." *Id.* According to Plaintiffs, Weinhaus is "among America's most aggressive judicial reformers." *Id.* at 10. Without him, Plaintiffs allege that their First Amendment freedom of speech is being impaired because Defendants have "interfered with Plaintiffs ability to have its Officer and Director … fulfill his fiduciary duties." *Id.* at 15. Plaintiffs also allege that Defendants' actions impaired Plaintiffs' freedom to associate with Weinhaus. *Id.* at 16.

Following the filing of the complaint in this matter, the ARDC did in fact bring disciplinary charges against Weinhaus. Doc. 13-1.[2] Plaintiffs assert that those proceedings were prompted by Judge Regina A. Scannicchio, who allegedly complained to the ARDC about Weinhaus's involvement with Plaintiffs by sending the ARDC content from Plaintiffs' websites. Doc. 1 at 7. Plaintiffs allege that Defendants are pursuing Weinhaus "to frustrate Plaintiffs' pursuits of judicial reform that touch on Illinois" and that this pursuit is viewpoint discrimination. *Id.* at 8.

The ARDC's disciplinary complaint alleges that Weinhaus caused a website to be created for Children of the Court that included a webpage entitled "Team" on which he posted a picture of Judge Wilson above the term "Nationwide Enforcer" and a biography that read:

> Although he sits on a bench in Cook County, Illinois, his order has created a national organization, advocating in every state. Judge Wilson is responsible for enforcing the funding of Children of the Court pursuant to his April 18, 2023 order in Cook County.

Doc. 13-1 at 2–3. The ARDC's complaint alleges that Weinhaus caused this statement to be posted on the Children of the Court website with knowledge of the statement's falsity in violation of Illinois Rule of Professional Conduct 8.2(a) (forbidding lawyers from making false statements or statements with reckless disregard to truth or falsity concerning the qualifications or integrity of a judge) and Rule 8.4(c) (forbidding lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id.* at 3–5.

The ARDC's disciplinary complaint also alleges that Weinhaus caused an article to be posted on the *ALABnews* website that included the following statement:

> In an unprecedented "slam" on a fellow judge, another Cook County judge and leader the Hon. Thaddeus L. Wilson

---

[2] The Court takes judicial notice of the fact of the ARDC complaint at Plaintiffs' request, Doc. 13, while not accepting the truth of any of the allegations therein.

> immediately ordered an organization be started to keep judges like
> [Judge Regina] Scannicchio away from cases involving children.

*Id.* at 3. The disciplinary complaint alleges that the above statement violated Weinhaus's duties under Illinois Rules of Professional Conduct 8.2(a) and 8.4(c) because Judge Wilson did not order such organization be started, nor did Judge Wilson order any organization to take action against Judge Scannicchio. *Id.* at 3–4.

The complaint in this matter seeks equitable relief. First, Plaintiffs request that this Court declare "that Defendants' actions violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution." Doc. 1 at 17. Second, Plaintiffs request that the Court "declar[e] that the speech of the Plaintiffs on their websites and letterhead or any that could reasonably be viewed attributable to them or on their behalf is that of the Plaintiffs and not that of those who owe Plaintiffs a duty." *Id.* Third, Plaintiffs seek an injunction barring Defendants "from pursuing Plaintiffs' Officers and Directors for the speech of Plaintiffs." *Id.* Finally, Plaintiffs ask for an injunction "preventing Defendants from engaging in further unconstitutional conduct." *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case should be dismissed when a plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). This is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face" and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff does not need to plead

particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(1), a case must be dismissed when the Court has no subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When a motion to dismiss argues both a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) as well as other Rule 12(b) defenses, the court should consider the Rule 12(b)(1) challenge first. *See Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). In evaluating a motion to dismiss under Rule 12(b)(1), the court must accept all well-pled allegations as true and draw reasonable inferences in the plaintiff's favor but may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

A motion to dismiss on abstention grounds does not fit neatly into either Rule 12(b)(1) or 12(b)(6), but courts in this district have treated such motions as coming under Rule 12(b)(1), and Plaintiffs do not object to such treatment here. *See Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014).

## ANALYSIS

The Court begins with Defendants' standing argument. "Standing arises under Article III's 'case or controversy' requirement." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015). "The doctrine of standing instructs the court to determine if a litigant is entitled to a federal resolution of his grievance." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013).

The constitutional requirements for standing are: "(1) an 'injury in fact,' that is, 'an invasion of a legally protected interest which is ... concrete and particularized, and ... actual or imminent'; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is 'fairly traceable' to the challenged conduct; and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Dunnet Bay Const.*, 799 F.3d at 688 (citation omitted). Not every injury constitutes an injury in fact for the purposes of standing; the injury must be to a "legally protected" interest. *Id.* So, even if someone is injured by a government's enforcement action (or lack of enforcement action) against another, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also United States v. Texas*, 599 U.S. 670, 678 (2023) ("[F]or standing purposes, the absence of coercive power over the plaintiff makes a difference: When 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed' to establish standing." (citation omitted)). Relatedly, a prudential limitation on standing generally prohibits third-party claims. *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000). "The Supreme Court has established a narrow exception to this doctrine, allowing third-party claims when the third-party plaintiff can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest." *Id.*

Plaintiffs assert that they meet the requirements for standing because they were directly injured by Defendants' "campaign against Plaintiffs' key man." Doc. 40 at 7. Plaintiffs further argue that their legally protected interest is in "associat[ing] with their attorneys to help them speak." *Id.*; *see also* Doc. 1 at 9 ("Upon learning of the CHARGE PURSUIT, Weinhaus immediately ceased his reporting work for Judiciocracy resulting in a harm to the organization

and its publications."); *id.* ("Each Plaintiff is now faced with an officer and director who is unable to perform his duties for either entity …"). Plaintiffs also allege that no one else could do the job that Weinhaus does, and therefore Plaintiffs are unable to publish articles or otherwise speak without him. *Id.* ("Due to Weinhaus' decades of experience and deep familiarity with the topic, any replacement or even complement would be prohibitively expensive.").[3]

The deficiency in Plaintiffs' theory of standing is two-fold. First, it does not meet the heightened requirements for standing predicated on the prosecution of another individual. Though Plaintiffs worked with Weinhaus, the legally protected interests at issue here belong to Weinhaus. *See Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (holding that person who lived with an individual who was subject to city prosecution in municipal court did not have standing to sue the city on the basis of the prosecution). The ARDC is not alleged to have had any direct interactions with Plaintiffs, let alone attempted to directly regulate Plaintiffs' speech. Nor could it have, given that the ARDC is a professional regulatory body with no power over non-lawyers like Plaintiffs. While the ARDC's announcement of possible charges against Weinhaus is alleged to have led to Weinhaus stopping certain work for Plaintiffs, this indirect injury is not legally cognizable. *Linda R.S.* holds that there is no justiciable controversy regarding the prosecution of another individual, "which knocks out *all* substantive legal theories" arising from such a claim. *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 901 (7th Cir. 2012) (Easterbrook, C.J., concurring in the judgment) (noting that a plaintiff "needs to show how he

---

[3] Plaintiffs also briefly argue that they have third-party standing "due to their relationship with the key man." Doc. 40 at 18. However, Plaintiffs do not assert that Weinhaus is unable to protect his own interests, a key requirement of third-party standing. *See Massey*, 221 F.3d at 1035 (requiring "some obstacle to the first party's ability to protect his own interest" for third-party standing). Nor could Plaintiffs do so, given that Weinhaus is afforded the power to raise First Amendment claims before the ARDC, and to appeal through the courts. *Cleveland v. Att'y Registration & Disciplinary Comm'n of Illinois Supreme Ct.*, No. 95 C 5775, 1996 WL 520857, at *4 (N.D. Ill. Sept. 10, 1996), *aff'd sub nom. Skolnick v. Att'y Registration & Disciplinary Comm'n*, 129 F.3d 119 (7th Cir. 1997) ("Case law clearly establishes that an attorney may challenge the constitutionality of ARDC disciplinary proceedings within the proceedings themselves, before the Illinois Supreme Court and ultimately by the United States Supreme Court.").

was injured by what the defendants did *to* him, rather than by what they didn't do to other people or what they didn't do *for* him"); *see also, e.g.*, *Swanson*, 719 F.3d at 783 ("Because [the plaintiff] was not the subject of any municipal citation, and was not the object of any government action, [the plaintiff] has not suffered an 'injury in fact,' and has not satisfied the first element of standing.").[4] Here, Plaintiffs have not shown that they were injured by what the Defendants did to them as opposed to what Defendants did to Weinhaus, and therefore Plaintiffs lack standing.

The second issue with Plaintiffs' standing argument is that Plaintiffs' injury was caused not by the ARDC's decision to pursue charges against Weinhaus, but by Weinhaus's independent decision to stop doing certain work for Plaintiffs.[5] There are no allegations in the complaint either that the ARDC required Weinhaus to stop working with Plaintiffs, or that Weinhaus would return to work for Plaintiffs if the ARDC complaint were dismissed. Thus, the Court can only speculate as to whether granting Plaintiffs' relief would redress Plaintiffs' injuries. "[S]uch speculation is not enough to support standing." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 642 (7th Cir. 2014) (ruling that because plaintiff's ability to erect a display would only change if a third party allowed plaintiff to do so, speculation alone supported redressability, which "doom[ed]" standing); *see also ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (noting that redressability cannot depend upon "unfettered choices made by independent

---

[4] Plaintiffs' reference to *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd,* 553 U.S. 181, (2008) does not advance their argument. That case dealt with a specific form of third-party standing, associational standing, through which an organization has standing to assert the rights of its members. *Id.* at 951. Associational standing has several requirements, and Plaintiffs have made no effort to show that those requirements are met here. For example, there is no suggestion that Plaintiffs are, in fact "associations" within the legal meaning of that term, nor that Weinhaus is a "member" as opposed to an executive.

[5] To be clear, the only work Weinhaus allegedly stopped doing for Children of the Court is "freez[ing] its letter campaigns which had previously yielded positive results." Doc. 1 at 9. It is unclear what "positive results" means in this context. It is also unclear how any letter campaigns would be related to the ARDC complaint against Weinhaus.

actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict.").

This problem is brought into focus by the relief Plaintiffs have sought. Specifically, Plaintiffs have asked this Court to issue a declaration stating that the speech appearing on Plaintiffs' "websites and letterhead or any that could reasonably be viewed attributable to them or on their behalf is that of the Plaintiffs and not that of those who owe Plaintiffs a duty." Doc. 1 at 17. Even if this Court were to entertain such a request for relief,[6] a declaration that the speech on Plaintiffs' website is Plaintiffs' speech would do nothing to redress the injury Plaintiffs allegedly have suffered. After all, the Rules of Professional Conduct prohibit attorneys not only from making false statements, but also from making misstatements through others. *See* Illinois Rule of Professional Conduct 8.4(a) (noting that a lawyer cannot "knowingly assist or induce another" to violate the Rules of Professional Conduct "or do so through the acts of another") Therefore, the ARDC could continue to pursue Weinhaus despite any declaration from the Court that it is Plaintiffs, and not Weinhaus, speaking on Plaintiffs' websites.

Plaintiffs also have requested an injunction prohibiting the ARDC from "pursuing Plaintiffs' Officers and Directors for the speech of Plaintiffs." Doc. 1 at 17. Again, even if this were a viable request for relief, Weinhaus might decide that notwithstanding the order, he is no longer inclined to work with Plaintiffs in the manner in which they request. Weinhaus has put himself in a tenuous position by choosing to lead organizations as an executive while also maintaining his law license, given that an attorney's rules of professional responsibility curtail an

---

[6] The Court would not, in fact, entertain such a request for relief. A court could conceivably make a factual finding as to who can be held legally responsible for specific statements already made. But no court can predict the future, and it would be wholly inappropriate for a court to declare who can be held legally responsible for statements made at unknown times in the future, by unknown parties, under unknown circumstances. "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Matis*, 431 U.S. 171, 172 (1977).

attorney's actions both inside and outside the courtroom and in a manner that a non-lawyer is not subject to.[7] These rules govern more than just attorney speech. The Court could not fault Weinhaus for choosing a more conservative course in the future based upon his own independent ethical judgment and risk tolerance. Nor could the Court force Weinhaus to behave more aggressively just because Plaintiffs want him to. According to the complaint, both Plaintiffs seem to have companies that cannot function without Weinhaus at the helm. Whatever else one could say about such a business model, it is not the fault of Defendants. Because this Court exercises no authority over Weinhaus and has no power to control who Weinhaus volunteers for or how he executes his duties, Plaintiffs have failed to establish redressability and the suit must be dismissed.

In addition to standing, Defendants argue that the Court should abstain from hearing this dispute. If Weinhaus had brought this case himself, abstention would be required pursuant to *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) (holding that a federal court should abstain from a case brought by attorney raising a constitutional challenge to his state attorney disciplinary proceedings). Defendants argue that even though Weinhaus did not bring this action, an extension of *Younger* abstention applies, citing *SKS & Associates v. Dart*, 619 F.3d 674 (7th Cir. 2010). In *SKS & Associates*, the Seventh Circuit recognized that "[u]nder established abstention doctrines," federal courts "may, and often must, decline to exercise [] jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Id.* at 677. There, though the

---

[7] For example, Plaintiffs generally have a First Amendment right to make false statements. *See U.S. v. Alvarez*, 567 U.S. 709, 718 (2012) ("falsity alone may not suffice to bring the speech outside the First Amendment."). Weinhaus's First Amendment rights are more limited. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1082 (1991) (O'Connor, J., concurring) (noting that "lawyers are officers of the court, and as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech.*"); In re Sawyer*, 360 U.S. 622, 646-47 (1959) (Stewart, J., concurring) ("Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech.").

specific requirements of *Younger* abstention were not met, the Seventh Circuit found that abstention was appropriate because the federal suit asked the federal court to manage and supervise a state suit and because the plaintiff had failed to show that an adequate remedy in state law was lacking. *Id.* at 677–680; *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (reasoning similarly and holding that the plaintiff could not simply invoke a federal constitutional right to "compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute"). Thus, even when the traditional requirements of *Younger* are not present, the underlying principles of comity and federalism may still instruct that the court abstain if the court is being asked to disrupt and interfere with state court proceedings, and the level of intrusion sought is "simply too high." *Woodard*, 997 F.3d at 722.

In this case, Plaintiffs ask the Court to prohibit the ARDC from "pursuing Plaintiff's Officers and Directors" for unspecified speech in the past, present, and future. Doc. 1 at 17. Attorney discipline is a power traditionally reserved to the states, in which the states have "an extremely important interest." *Middlesex*, 457 U.S. at 434. Were the Court to grant the relief sought, it would greatly offend the principles of comity and federalism. Moreover, Plaintiffs have not shown that they have no adequate remedy in state law. Whether or not they are at liberty to participate in the disciplinary proceedings themselves, Plaintiffs point to no barriers to bringing an independent state court action raising the claims they have raised here. For these reasons, even if the present dispute presented a judiciable controversy, abstention would be appropriate.

The Court is not persuaded by Plaintiffs' argument that an abstention exception applies because the disciplinary proceedings were brought in bad faith to harm Plaintiffs. The complaint

makes one explicit allegation that the ARDC acted in bad faith, noting that neither Judge Scannicchio nor Judge Wilson have reached out to Plaintiffs to request a correction of their websites. Doc. 1 at 14. But it is not a reasonable inference that the non-actions of third parties demonstrate bad faith by Defendants. The complaint also makes two references to the ARDC's actions being done "for the purpose of stifling the speech and activities of the Plaintiffs." *See, e.g.,* Doc. 1 at 9, 16. These allegations are conclusory, not supported by any factual content, and are frankly implausible in light of the already-noted fact that the ARDC has no power over Plaintiffs or their speech. *See Collins v. Kendall County, Ill*., 807 F.2d 95, 98 (7th Cir. 1986) ("A plaintiff asserting bad faith prosecution as an exception to *Younger* abstention must allege specific facts to support an inference of bad faith."). The standard for bad faith is a high one, requiring that plaintiffs plead facts to demonstrate that "state officials are using or threatening to use prosecutions, *regardless of their outcome*, as instrumentalities for the suppression of speech." *Collins*, 807 F.2d at 101. There are no plausible allegations in the complaint that rise to this level.

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiffs' complaint under Rule 12(b)(1) for lack of standing. Even if Plaintiffs had standing, abstention principles would apply. To the extent Plaintiffs' counsel believes that he can correct the serious deficiencies noted in this opinion consistent with his Rule 11 obligations, Plaintiffs may file an amended complaint by January 15, 2025.

Dated: December 10, 2025

_____
APRIL M. PERRY
United States District Judge