**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHILDREN OF THE COURT and JUDICIOCRACY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 25-cv-3387 |
| v. | ) ) | |
| | ) | Judge April M. Perry |
| ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION, LEA S. GUTIERREZ, and TAMMY EVANS, in their official capacities, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Children of the Court and Judiciocracy LLC (collectively, "Plaintiffs") bring this lawsuit against the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), and its employees Lea S. Gutierrez and Tammy Evans (collectively, "Defendants"). Doc. 59. In the first amended complaint, Plaintiffs allege that Defendants interfered with Plaintiffs' free speech rights and ability to access legal counsel by bringing disciplinary charges against Illinois attorney Edward Weinhaus. *See id*. at 1. As such, Plaintiffs assert a single claim under 42 U.S.C. § 1983 for violation of their First Amendment rights. *Id*. ¶¶ 155-174. Defendants now move for the second time to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing a lack of standing, and, in the alternative, ask the Court to abstain from adjudicating the matter based on the ongoing disciplinary proceedings. Doc. 61. For the reasons set forth below, Defendants' motion to dismiss is granted.

## BACKGROUND[1]

Children of the Court is a Missouri non-profit corporation that works with adult children of divorce and advocates for the assignment of parental rights cases to judges who have been parents or foster parents. Doc. 59 ¶¶ 1, 19. Parents can sign the "Children of the Court Pledge" to become members and receive assistance from the organization once their children are adults. *Id.* ¶ 35.

Children of the Court was founded in 2023 by students in a social entrepreneurship class at UCLA and their professor, Illinois lawyer Edward Weinhaus. *Id.* ¶ 16. The funding for Children of the Court came from an unrelated case between Weinhaus and a third party, which was settled before Judge Thaddeus L. Wilson. *Id.* ¶¶ 23-24. Under the terms of the settlement agreement, Children of the Court would receive $10,000 per year for ten years. *Id.* ¶ 25. However, as a condition of this settlement Weinhaus could not receive compensation from Children of the Court; he therefore acts as the volunteer Executive Director. *Id.* ¶¶ 25, 32, 102. The organization is otherwise comprised of a four-member board and an operations manager. *Id.* ¶ 34.

Judiciocracy LLC is a Missouri limited liability company that Weinhaus founded in 2023. *Id.* ¶¶ 2, 38, 40. Weinhaus created Judiciocracy as a media company in an effort to "protect both his legal practice and the publication." *Id.* ¶ 39. Weinhaus later sold a majority interest in Judiciocracy but remains a member of the LLC and has continued to serve as

---

[1] The following facts are drawn from the allegations in Plaintiffs' first amended complaint, which for the purposes of this motion the Court accepts as true, drawing all reasonable inferences in Plaintiffs' favor. *See Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also considers public records which are referenced in the first amended complaint or of which the parties have requested the Court to take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that when deciding a motion to dismiss, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Judiciocracy's CEO. *Id*. ¶¶ 42, 49. The company controls a number of publications, including *ALABnews* and *AbusiveDiscretion*. *Id*. ¶ 41.

On January 5, 2024, Judge Regina A. Scannicchio, a Circuit Judge in Cook County, informed the ARDC of purported "false and inaccurate" statements made by Weinhaus in an *ALABnews* article and on the Children of the Court website. Doc. 26-1 at 2.[2] Thereafter, Tammy Evans, Senior Legal Counsel for the ARDC, was assigned to the matter and met with Weinhaus who provided a sworn statement. Doc. 59 ¶¶ 7, 81. Eight and a half months later, the ARDC announced that it had started the process of bringing charges against Weinhaus. *Id*. ¶ 98. Because Plaintiffs lacked resources to indemnify Weinhaus, he immediately ceased his reporting and judicial reform work with them. *Id*. ¶ 99.

In its disciplinary complaint, the ARDC alleged that Weinhaus caused a website to be created for Children of the Court that included a webpage entitled "Team" on which he posted a picture of Judge Wilson above the term "Nationwide Enforcer" and a biography that read:

> Although he sits on a bench in Cook County, Illinois, his order has created a national organization, advocating in every state. Judge Wilson is responsible for enforcing the funding of Children of the Court pursuant to his April 18, 2023 order in Cook County.

Doc. 13-1 at 3-4.[3] According to the ARDC complaint, Weinhaus caused this statement to be posted on the Children of the Court website with knowledge of the statement's falsity in violation of Illinois Rule of Professional Conduct 8.2(a) (forbidding lawyers from making false statements or statements with reckless disregard to truth or falsity concerning the qualifications

---

[2] The Court takes judicial notice of Judge Scannicchio's statement regarding Weinhaus, Doc. 26-1, as incorporated in the first amended complaint, *see* Doc. 59 ¶ 52, while not accepting the truth of any of the allegations therein.

[3] The Court also takes judicial notice of the ARDC complaint, Doc. 13-1, as incorporated in the first amended complaint, Doc. 59 ¶ 66, while not accepting the truth of any of its allegations.

or integrity of a judge) and Rule 8.4(c) (forbidding lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id.* at 5-6.

The ARDC's complaint also alleged that Weinhaus caused an article to be posted on the *ALABnews* website that included the following statement:

> In an unprecedented "slam" on a fellow judge, another Cook County judge and leader the Hon. Thaddeus L. Wilson immediately ordered an organization be started to keep judges like [Judge Regina] Scannicchio away from cases involving children.

*Id*. at 4. The ARDC claimed that this statement violated Weinhaus's duties under Illinois Rules of Professional Conduct 8.2(a) and 8.4(c) because Judge Wilson did not order such organization to be started, nor did Judge Wilson order any organization to take action against Judge Scannicchio. *Id*. at 5-6.

Plaintiffs allege that the ARDC brought charges against Weinhaus in an effort to mount a "direct attack" on them "for the purpose of stifling [their] speech and activities," Doc. 59 ¶¶ 70, 98, and as a result, Defendants have successfully interfered with Plaintiffs' ability to continue operating. *See, e.g.*, *id*. ¶¶ 68, 121, 163. Plaintiffs therefore seek monetary damages and declaratory and injunctive relief preventing Defendants from "engaging in … unconstitutional conduct" against them via the attorney discipline process. *See id*. at 37-38.

## ANALYSIS

Despite substantial revisions, including adding more than twenty pages of text, the first amended complaint contains many of the same deficiencies identified in the Court's opinion of December 10, 2025 (the "December 10 Opinion") which granted Defendants' first motion to

4

dismiss. Doc. 57. The Court therefore incorporates the reasoning of the December 10 Opinion herein and highlights the new and persisting issues with Plaintiffs' claim.

## I.     Article III Standing

The Court begins with standing, which "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). When a defendant brings a 12(b)(1) motion arguing a lack of standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). To establish standing, a plaintiff must plausibly allege (1) a concrete and particularized injury in fact; (2) that is traceable to the defendant's conduct; and (3) that is likely to be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995). Here, Defendants argue that Plaintiffs lack standing because they do not have a legally cognizable interest in the prosecution of Weinhaus and have otherwise failed to demonstrate any concrete injury to themselves. For the following reasons, the Court agrees.

Not every injury is sufficient to confer standing. *See Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006). "The alleged injury must be legally and judicially cognizable. This requires, among other things, that the plaintiff have suffered an invasion of a legally protected interest." *Id.* (internal quotations omitted). For that reason, even if someone purports to be injured by a government's enforcement action (or lack of enforcement action) "a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973);[4] *see also United States v. Texas*, 599 U.S. 670, 678 (2023) ("[F]or standing purposes, the absence of coercive power over the plaintiff makes a difference: When a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed to establish standing.") (internal quotations omitted). The exception to this rule is narrow and permits a third party claim only if the third party can show a close relationship to the first party and some obstacle to the first party's ability to protect their own interest. *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000).

Plaintiffs argue that they were directly injured by Defendants' actions, and that they meet the third-party exception, in part, because Weinhaus is unable to protect their interests due to the disciplinary charges against him. *See* Doc. 65 at 7. As to their direct injuries, Plaintiffs allege a host of damages, including: (1) diminished journalistic output at Judiciocracy; (2) loss of access to their attorney;[5] and (3) the inability of Children of the Court to fully operate or continue a

---

[4] Plaintiffs argue that *Linda R.S.* is not applicable to this case because they do not seek to compel or direct a prosecution but rather to vindicate their own constitutional rights. Doc. 65 at 4. However, *Linda R.S.* explicitly states that private citizens do not have a cognizable interest in the prosecution *or nonprosecution* of another, and Plaintiffs' entire theory of harm is linked to Defendants' prosecution of Weinhaus. Therefore, *Linda R.S.* is both relevant and binding authority.

[5] Plaintiffs make the related argument that, in addition to Weinhaus, they have been denied access to legal counsel because Defendants' prosecution of Weinhaus has made it difficult to find a "replacement attorney." Doc. 65 at 6. The Court finds this far too speculative. *See Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (noting that courts need not accept "sheer speculation, bald assertions, and unsupported conclusory statements on a motion to dismiss") (internal quotations omitted). Plaintiffs have not alleged any facts that would support an inference that Defendants' prosecution of Weinhaus is the reason why Plaintiffs have been unable to find another attorney interested in joining their team. *See* Doc. 59 ¶¶ 173-74. If anything, given that Weinhaus was working for free and Children of the Court's operating budget is $10,000 per year, it seems more likely that financial constraints are the problem. Plaintiffs allege (without any factual support) that Defendants made threats against another attorney, Ryan Cleys, but he was Weinhaus's attorney, not Plaintiffs' attorney. *Id.* ¶ 89. It is the prerogative of private attorneys to choose their clients and determine if they can do so within the bounds of their professional obligations. Any impact that Defendants' actions may have on Plaintiffs' talent pool is far too attenuated to qualify as an injury for standing. Moreover, Plaintiffs do not need an attorney to do the things that they complain about being unable to do – news reporting and "judicial reform work" via letter campaigns. *Id.*

letter-writing campaign. *See* Doc. 59 ¶¶ 125-27. However, even if Plaintiffs have been impacted by the ARDC's prosecution of Weinhaus, none of these allegations rise to the level of a legally cognizable injury.

As explained in the December 10 Opinion, the legally protected interests at issue here belong solely to Weinhaus. *See Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (holding that person who lived with an individual who was subject to city prosecution in municipal court did not have standing to sue the city on the basis of the prosecution). It has been well-established that the ARDC is a professional regulatory body with no power over Plaintiffs, including the ability to discipline or regulate their speech. Plaintiffs concede that "[n]obody has ever claimed [their] speech was illegal," and they are not under the ARDC's jurisdiction. *See* Doc. 59 ¶¶ 60, 83. In an effort to sidestep this fact, Plaintiffs cite a number of Supreme Court cases which state that organizations speak through their agents. *See id*. ¶¶ 61-64. Plaintiffs then argue that any impairment of those agents' ability to speak on behalf of the organization improperly keeps that organization from their attorney and is a direct injury to their First Amendment rights. *Id*. ¶ 62. The Court is not persuaded.

As a preliminary matter, the Court notes that ¾ of the cases cited by Plaintiffs involved the plaintiffs themselves being enjoined or otherwise targeted via suit. *See Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 2 (1964); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 218 (1967); *In re Primus*, 436 U.S. 412, 414-16 (1978). In other words, none of these cases involved any question of standing. They are therefore irrelevant here. The remaining case, *National Association for Advancement of Colored People v.*

---

¶¶ 99, 101. Some of Chicago's most influential judicial reform organizations have non-lawyers as Executive Directors. *See, e.g.*, Chicago Appleseed Center for Fair Courts, https://www.chicagoappleseed.org/about-us/our-staff/#rachel-lyons; Restore Justice, https://www.restorejustice.org/about-us/our-team/; Illinois Justice Project, https://iljp.org/about/.

*Button*, 371 U.S. 415, 428 (1963), did address standing. In *Button*, the Supreme Court found that the NAACP had standing to challenge a statute that directly curtailed their attorneys' legal activities. Here, of course, Weinhaus's ARDC prosecution does not directly curtail Plaintiffs' activities, legal or otherwise. Drafting content for websites and news stories is not legal work, and Plaintiffs do not need a lawyer to engage in such functions.[6] Plaintiffs are free to engage in whatever speech they wish, and the ARDC cannot stop them.

Plaintiffs claim that Defendants are targeting them through Weinhaus for their criticism of the judiciary and sitting judges. But alleging that Weinhaus is being disciplined because of their work does not prove an injury to Plaintiffs. That Plaintiffs disagree with Defendants' actions or believe they are being treated differently from other organizations does not confer standing without an actual injury. *See Harris v. City of Zion, Lake Cnty., Ill.*, 927 F.2d 1401, 1405 (7th Cir. 1991); *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 665 (7th Cir. 2015) ("The mere allegation of unequal treatment, absent some kind of actual injury, is insufficient to create standing."). Therefore, because Plaintiffs have failed to allege a legally cognizable injury that is their own, they do not have direct standing. And to the extent Plaintiffs believe they have third party standing, they have not made any allegations that Weinhaus cannot protect his own interests.[7] To the contrary, Plaintiffs admit that Weinhaus has already raised similar arguments in

---

[6] The complaint alleges that "Weinhaus' assistance was crucial in helping the organizations speak in both cases … he was only fulfilling his duties to the organizations as attorney." Doc. 59 ¶ 68. The latter statement is an argument, not a fact, and arguments in complaints are not entitled to a presumption of truth. Moreover, the argument that creating digital marketing or news content for clients is a duty of an attorney is not plausible. *See id*. ¶ 86(g) (Weinhaus admitted to the ARDC that he wears "two hats" for Plaintiffs – one as a lawyer, and one as a "publisher" of "news.").

[7] Plaintiffs argue the reverse, claiming that Weinhaus cannot adequately represent *their* interests. Doc. 65 at 11. However, this is not the relevant question for third party standing. *See Massey*, 221 F.3d at 1035 (requiring "some obstacle to the first party's ability to protect his own interest" for third-party standing). Furthermore, to the extent Plaintiffs are attempting to assert associational standing, *see* Doc. 59 ¶¶ 35-37, through which an organization has standing to assert the rights of its members under certain conditions,

his own response to the ARDC. Doc. 65 at 11. Therefore, Plaintiffs have still not shown they were injured by what Defendants did to them as opposed to what Defendants did to Weinhaus, and Plaintiffs lack standing on this basis alone.

Additionally, Plaintiffs have failed to ask the Court for relief that would redress their purported injuries. In response to the December 10 Opinion, Plaintiffs now allege that if the Court granted their request for relief, "Weinhaus would return in full capacity to the Plaintiffs and the Plaintiffs would be able to attract other attorneys and executives currently chilled from assisting [them]."[8] Doc. 59 ¶ 151. However, Plaintiffs do not address several of the other concerns addressed in the opinion, including that the Court cannot issue relief tantamount to an advisory opinion. For example, Plaintiffs request an "injunction preventing Defendants from engaging in further unconstitutional conduct by attacking attorneys who advise organizations who conduct Judicial Reform." *Id*. at 37. However, even if Defendants acted unconstitutionally in this instance, the Court cannot issue a blanket injunction against unknown conduct, involving unknown parties, and under unknown circumstances, nor can it broadly instruct Defendants to comply with the Constitution. Plaintiffs cannot obtain "an order that attempts to resolve a controversy that has not yet arisen and may never arise." *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1187-88 (7th Cir. 1998). Similarly, "courts cannot issue a general injunction against all possible breaches of the law, nor should an injunction be broader than the

---

*see Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017), these allegations are ill-developed and Plaintiffs make no effort to argue the issue or show how they meet the requirements in their response.

[8] The Court assumes for the purposes of this opinion that this statement is true, though it frankly lacks plausibility. Non-attorney executives are not bound by the Illinois Rules of Professional Conduct, so it is implausible that the ARDC's actions are chilling to them. And the first amended complaint states that Weinhaus ceased working with Plaintiffs because they did not have the resources to indemnify him, Doc. 59 ¶ 99, which suggests that his decision to stop (and presumably to restart) such work is as dependent upon Plaintiffs' funding as anything Defendants are doing.

illegal acts or practices charged or proven." *Bowles v. Montgomery Ward & Co.*, 143 F.2d 38, 42 (7th Cir. 1944).

Plaintiffs also ask the Court to declare "that [the language referenced in the ARDC complaint] is … the Plaintiffs," and enjoin Defendants "from removing protections of the Illinois Rules of Professional Conduct for Plaintiffs' attorneys for advising its clients and in no way barring the Defendants from pursuing Plaintiffs' attorneys for advising Plaintiffs illegally – such as embodied in Rule 8.4(a) Comment 1." Doc. 59 at 37. But neither of these requests would necessarily foreclose Defendants' prosecution of Weinhaus, which is the only thing that would redress Plaintiffs' purported injuries.

As the Court noted in the December 10 Opinion, the Illinois Rules of Professional Conduct prohibit attorneys not only from making false statements, but also from making misstatements through others. *See* Illinois Rule of Professional Conduct 8.4(a) (noting that a lawyer cannot "knowingly assist or induce another" to violate the Rules of Professional Conduct "or do so through the acts of another"). Therefore, whether or not the Court declared that the statements at issue belonged to Plaintiffs, the ARDC could continue to pursue Weinhaus under the theory that Plaintiffs were effectively his puppets. As for Plaintiffs' request that the Court instruct Defendants against "removing protections" of Rule 8.4(a) Comment 1, the ARDC complaint is not based upon Weinhaus giving legal advice to Plaintiffs, but is instead premised on the theory that Weinhaus was the publisher of Plaintiffs' content. In short: a declaratory judgment is not a remedy for the problems of which Plaintiffs complain.

Lastly, the first amended complaint includes additional requests for compensatory and punitive damages, but the Court cannot award damages in this case because states, state agencies, and state officials named in their official capacities may not be sued for monetary

10

damages under Section 1983, and Plaintiffs do not bring any individual capacity claims. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003); *Ditkowsky v. Stern*, 581 F. Appx. 571 (7th Cir. 2014). As a result, because Plaintiffs have failed to establish redressability through either declarative, injunctive, or monetary relief, the suit must be dismissed for that reason as well.

## II. Abstention

What Plaintiffs really want, of course, is not a generalized warning that the ARDC should follow its own rules or abide by the Constitution or that the speech on Plaintiffs' websites is their own speech. The only thing that will actually help Plaintiffs is putting a stop to the ARDC proceedings against Weinhaus. And for that reason, even if Plaintiffs had standing, abstention would be appropriate

As the Court explained in the December 10 Opinion, the Seventh Circuit has found abstention proper where a federal court is asked to impose upon a state suit and the plaintiff has failed to show they do not have an adequate remedy in state law, regardless of whether the specific requirements of the *Younger* doctrine are met. *SKS & Associates v. Dart*, 619 F.3d 674, 677-80 (7th Cir. 2010); *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (reasoning similarly and holding that the plaintiff could not simply invoke a federal constitutional right to "compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute").

In their first amended complaint, Plaintiffs allege that they have "no other avenue of redress for violations of their First Amendment rights than to invoke federal laws … to protect [them] from abrogation by state acts." Doc. 59 ¶ 12. However, other than reiterating they are not

11

permitted to intervene in the ARDC action, *id*. ¶ 11, Plaintiffs do not make any allegations that they are otherwise foreclosed from asserting their rights at the state level.[9]

Plaintiffs also argue the second element of *Younger*, presumably as set forth in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), is not met because Defendants "have no compelling state interest in the *narrowed* relief Plaintiffs seek," and the Court could grant the declaratory relief they ask for without directly managing the ARDC's disciplinary action. Doc. 65 at 12. As explained above, the Court disagrees that the declaratory relief sought would actually redress Plaintiffs' purported injuries. In any event, the second prong of *Younger* asks if the state proceedings "implicate important state interests," not whether Defendants have a compelling state interest in the relief sought. *Middlesex*, 457 U.S. at 432. It is well established that a state has "an extremely important interest in maintaining and assuring the professional conduct of [its] attorneys." *Id.* at 434. In sum, for the Court to insert itself into this state disciplinary hearing would be contrary to core principles of equity, comity, and federalism, especially when Weinhaus is raising nearly identical issues to those brought here.

There are three exceptions to *Younger* abstention, *see Pincham v. Illinois Jud. Inquiry Bd.*, 872 F.2d 1341, 1349 (7th Cir. 1989), two of which Plaintiffs argue apply in this case. First, Plaintiffs argue that the "bad faith" exception applies because Defendants brought disciplinary charges against Weinhaus in an effort to indirectly restrict Plaintiffs' speech. *See Collins v. Kendall Cnty., Ill.*, 807 F.2d 95, 98 (7th Cir. 1986) ("Bad faith or harassing prosecution … is an

---

[9] In fact, in Plaintiffs' response they argue that Defendants' suggestions (including moving for a supervisory order or submitting an *amicus curiae* brief) are insufficient because they do not "constitute[] participation in Weinhaus's underlying ARDC [action] and therefore are not an 'adequate opportunity' to raise or otherwise address the underlying constitutional claims." Doc. 65 at 11. But the question is whether Plaintiffs have an adequate remedy at state law, not whether Plaintiffs are permitted to intervene in the ARDC action.

exception to the *Younger* doctrine."). However, to make a showing of bad faith a plaintiff "must allege specific facts to support an inference of bad faith." *Arkebauer v. Kiley*, 985 F.2d 1351, 1359 (7th Cir. 1993). Here, Plaintiffs have not done so. The fact that the speech is not illegal, or that the ARDC encouraged Weinhaus not to make statements about sitting judges, or that during an interview the ARDC attorney responded to Weinhaus's self-serving explanations with words like "I understand" or "okay" does nothing to demonstrate bad faith with respect to Plaintiffs. Plaintiffs' argument that Defendants only decided to bring disciplinary charges after Judiciocracy resumed an investigation into bribery allegations in Cook County, Doc. 59 ¶¶ 96-98, might be compelling if there was any indication that the ARDC knew about such an investigation. But no facts are alleged from which one could reasonably infer that Weinhaus's searches of public records were known to the ARDC, or if they were, that the ARDC knew that Weinhaus was on the verge of breaking a story about judicial corruption and therefore decided in bad faith that Judiciocracy must be stopped.

Nor have Plaintiffs plausibly alleged that the "flagrantly and patently violative of express constitutional prohibitions" exception to abstention applies. For this exception to apply, a statute or provision thereof must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger v. Harris*, 401 U.S. 37, 53-54 (1971). The Seventh Circuit has indicated that the attorney discipline process itself does not rise to this level, *Kozel v. Robinson*, 129 F.3d 1267 (7th Cir. 1997), and Plaintiffs do not allege that the relevant Illinois Rules of Professional Conduct are unconstitutional under all circumstances. Therefore, the exception does not apply here.

13

**CONCLUSION**

For these reasons, Defendants' motion to dismiss is granted. Plaintiffs' complaint is dismissed for lack of standing. Because Plaintiffs have not cured the deficiencies outlined in the December 10 Opinion and would not be able to do so in the future, this case is dismissed with prejudice.

Dated: May 15, 2026

_____
APRIL M. PERRY
United States District Judge

14